**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st St., 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Maeghan J. McLoughlin

*Proposed Counsel to the Debtor and Debtor in*
  *Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| HOT SHOT HK, LLC, : | Case No. 16-10449 |
| : | |
| : | |
| Debtor. : | |

-----------------------------------------------------------------x

### DECLARATION OF YOUSSEF SAADIA PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT OF FIRST DAY MOTIONS

I, Youssef Saadia, declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

1. I am the Chief Financial Officer of Hot Shot HK, LLC (the "Debtor") in the above captioned case (the "Chapter 11 Case") and, in such capacity I am familiar with the day-to-day operations, business, and financial affairs of the Debtor.

2. I submit this declaration ("Declaration") pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "LBR") to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of the Chapter 11 Case on the date hereof (the "Petition Date") and in support of the Debtor's petition (the "Petition") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with staff members of the Debtor, the Debtor's professional advisors, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial affairs. If called upon to testify, I would testify to the facts set forth in this Declaration and that I am authorized to submit this Declaration on behalf of the Debtor.

## OVERVIEW OF THE DEBTOR

A. Required Contents Of Affidavit

i. Overview of the Debtor

    a) Nature of the Debtor's Business

4. The Debtor is a mid-sized wholesaler in the women's apparel and outerwear industry. The Debtor is located in New York, New York, and has been based there since its inception in November 2009.

5. The Debtor produces fashion forward garments with an emphasis on fun and colorful clothing for juniors and girls.

6. The Debtor sources both domestic and international fabrics. The Debtor manufactures the majority of its clothing in its own factories located in Manhattan.

7. The Debtor had gross sales of approximately $13,731,021 during 2015 and employs approximately 35 people. Its principal place of business is 1407 Broadway, Suite 2018, New York, New York 10018. The Debtor is owned 45% by Joseph Saadia, 37% by Marko Elenhorn, and 18% by Youssef Saadia.

    b) Circumstances Leading to Bankruptcy Filing

8. On or around July 31, 2013, Novelty Textile Inc. ("Novelty") filed an action in the United States District Court for the Central District of California, captioned *Novelty Textile, Inc.*

*v. The Wet Seal, Inc., et al.*, bearing Case No. CV13-5527 (the "Action"), in which it asserted, *inter alia*, that it held copyrights in three designs entitled NV-2647, NV-2630, and NV-2549 (collectively the "Designs") and that The Wet Seal, Inc. ("Wet Seal") and the Debtor violated Novelty's rights with respect to the Designs by selling garments bearing unauthorized reproductions of the Designs. The Debtor denied the allegations but the Court found that the Debtor and Wet Seal were both liable for willful copyright infringement. On December 5, 2014, based upon the jury verdict, the Court entered a judgment against the Debtor in the amount of $250,000 (the "Initial Judgment"), plus attorneys' fees and costs, and against Wet Seal in the amount of $400,000 (the "Wet Seal Judgment"), plus attorneys' fees and costs. The judgment directed that the Debtor and Wet Seal be jointly and severally liable for the costs and attorneys' fees awarded by the Court.

9. Shortly after entry of the Wet Seal Judgment, on January 15, 2015, Wet Seal filed its own voluntary petition under Chapter 11 of the Bankruptcy Code.

10. On March 4, 2015, the Court entered a second judgment against the Debtor for $392,175.00 in attorneys' fees, $5,073.40 in costs, and post-judgment interest on the Initial Judgment at the appropriate rate (the "Second Judgment" and together with the Initial Judgment, the "Judgment").[1]

11. Following entry of the Judgment and Wet Seal's bankruptcy filing, on September 3, 2015, the Debtor entered into a settlement with Novelty (the "Settlement") whereby the Debtor agreed to pay Novelty the total sum of $437,500.00, with payment commencing October 1, 2015. The Debtor has not been able to meet its obligations under the Settlement.

---

[1] Novelty sought attorneys' fees and costs against both the Debtor and Wet Seal, but the Debtor was forced to bear sole responsibility because Wet Seal was protected by the automatic stay afforded Debtors under section 362(a) of the Bankruptcy Code.

3

12. Prior to entry of the Wet Seal Judgment and the nearly simultaneous Wet Seal bankruptcy filing, Wet Seal was one of the Debtor's primary customers. In light of the Wet Seal bankruptcy filing, the Debtor has not been paid on account of its sales to Wet Seal.

13. In addition to Wet Seal, several of the Debtor's other customers such as (i) Body Shop of America d/b/a Body Central, (ii) Arden B., (iii) Deb Shops SDW, LLC, (iv) Simply Fashions Stores Ltd., and (v) Dots, LLC filed for bankruptcy, causing the Debtor to lose approximately $10,000,000 in revenue during the 2014–2015 year.

14. The Debtor, much like the other clothing retailers who have filed for bankruptcy, has faced declining revenue in recent years. On November 19, 2014, the Debtor entered into a credit facility with JPMorgan Chase, N.A. (the "Prepetition Lender") consisting of a $4,000,000 line of credit (the "LOC").

15. Notwithstanding the Debtor's efforts to stay current with its obligations under the LOC, the Debtor fell into default on the LOC in October 2015. As of the Petition Date, the Prepetition Lender asserted that the Debtor owed a balance of $2,961,384.65 on account of the LOC.

16. The Debtor believes that filing the petition was necessary to preserve the value of the business and to maintain the Debtor's business as a going concern. The Debtor believes that the chapter 11 process will allow the Debtor to maximize the value of its assets for all creditors, including the Prepetition Lender.

4

    c)   The Debtor's Post-Petition Goals

17. Following the commencement of this case, the Debtor anticipates pursuing the sale of substantially all of its assets pursuant to Section 363 of the Bankruptcy Code. If feasible, the Debtor will also attempt to propose a Chapter 11 plan.

18. The Debtor believes that the chapter 11 process affords a better opportunity to provide a greater return to its creditors than any alternative wind down or liquidation process.

    ii.   Debtor's Case Was Not Originally Commenced Under Chapter 7

19. The Debtor's case was voluntarily commenced under Chapter 11 of the Bankruptcy Code. Accordingly, LBR 1007-2(a)(2) in inapplicable.

    iii.   Prepetition Creditors' Committee

20. In accordance with LBR 1007-2(a)(3), to the best of the Debtor's knowledge, no pre-petition creditors' committee has been formed.

    iv.   Holders of the Twenty (20) Largest Unsecured Claims

21. In accordance with LBR 1007-2(a)(4), a consolidated list setting forth the Debtor's twenty (20) largest unsecured creditors excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31) of the Debtor is attached as **Exhibit A**. As required by LBR 1007-2(a)(4), Exhibit A includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated or disputed.

    v.   Holders of the Five Largest Secured Claims

22. In accordance with LBR 1007-2(a)(5), a consolidated list setting forth the Debtor's five (5) largest secured creditors is annexed hereto as **Exhibit B**. As required by LBR 1007-2(a)(5), Exhibit B includes the creditors' names, addresses, telephone numbers (for persons

5

familiar with the account, if available), amount of each claim, a description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

    vi.    <u>Summary of the Debtor's Asset and Liabilities</u>

23.    As required by LBR 1007-2(a)(6) a summary of the Debtor's assets and liabilities is attached as **Exhibit C**.

    vii.    <u>Publicly Held Stock</u>

24.    As required by LBR 1007-2(a)(7), no classes of shares of stock, debentures, or other securities of the Debtor are publicly held.  The Debtor's membership is held as follows: 45% by Joseph Saadia, 37% by Marko Elenhorn, and 18% by Youssef Saadia.

    viii.    <u>Property Held by Others</u>

25.    The Debtor has no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity. Accordingly, LBR 1007-2(a)(8) is inapplicable.

    ix.    <u>Debtor's Office Space</u>

26.    As required by LBR 1007-2(a)(9), the Debtor leases the office space located at 1407 Broadway, Suite 2018, New York, New York 10018.

    x.    <u>Location of the Debtor's Assets and Books and Records</u>

27.    Pursuant to LBR 1007-2(a)(10), the Debtor's substantial assets and its books and records are located at the leased premises located at 1407 Broadway, Suite 2018, New York, New York 10018.  The Debtor does not have any assets held outside of the territorial limits of the United States.

xi.   Pending or Threatened Actions

28.   Pursuant to LBR 1007-2(a)(11), the nature and present status of pending or threatened actions against the Debtor is below:

| Case Name & Case No. | Status |
|---|---|
| **Novelty Textile, Inc. v. The Wet Seal, Inc., et al (Case No. CV13-05527) U.S. Dist. Ct., Central Dist. Of CA** | Novelty sought and obtained a judgment for willful copyright infringement against the Debtor and Wet Seal, and judgment was awarded to Novelty.  Debtor and Novelty entered into settlement agreement for payment of the Judgment, and the Debtor was obligated to pay $437,500.00 |
| **New York State Dep't of Labor, Unemployment Insurance Division** | NYS Dep't of State, Unemployment Insurance Division, has sent two (2) letters to the Debtor regarding an unemployment insurance claim submitted by claimant Dyan Bowne, who alleges to be a former employee, and not an independent contractor, of the Debtor. |
| **CIT Group Commercial Services, Inc. v. Hot Shot HK LLC (Index No. 515693/2015) New York State Supreme Court, County of Kings** | Plaintiff commenced the lawsuit on the grounds that the Debtor entered into an agreement for the sale of goods, among other things, in the agreed amount of $316,767.97 and Debtor has defaulted under the agreement and failed to pay the amount due. |
| **Matrix Int'l Textile d/b/a Nemax v. Hot Shot HK, LLC, et al (BC 605804);Superior Court of the State of California, County of Los Angeles** | Plaintiff commenced action for breach of contract, account stated, and conversion, among other things.  Plaintiff seeks payment of $36,125.98 on account of fabrics allegedly delivered to the Debtor. |
| **Milberg Factors, Inc. v. Hot Shot HK, LLC (Case No. 151251/2016); New York State Supreme Court, County of New York** | Plaintiff commenced action for goods sold and delivered and account stated and seeks a judgment in the amount of $61,718.80. |

The Debtor has commenced the following actions which are pending:

| Case Name & Case No. | Status |
|---|---|
| **Hot Shot HK, LLC v. Federal Insurance Company et al. (Index No. 654347/2015); Supreme Court of the State of New York, New York County** | Suit to recover from the Federal Insurance Company legal fees in connection with the Novelty lawsuit. |
| **Hot Shot HK, LLC v. Adli Law Group P.C., Dariush Adli, Drew H. Sherman, and Hanwei Cheng (BC 602312) Superior Court of the State of California, County of Los** | Suit for legal malpractice and breach of fiduciary duty in connection with the Novelty lawsuit. |

7

| | |
|---|---|
| **Angeles** | |
| **Hot Shot HK, LLC v. Yankee Clipper Distribution of California Inc. (Index No. 156995/2015); Supreme Court of the State of New York, New York County** | Suit for negligence, conversion, and unjust enrichment. |

xii.   Debtor's Senior Management

29.   In accordance with LBR 1007-2(a)(12), the Debtor's senior management consists of:

   a) Joseph Saadia – Chief Executive Officer

   b) Youssef Saadia – Chief Financial Officer

   c) Markou Elenhorn – Chief Operating Officer

xiii.   Payroll to Employees

30.   Pursuant to LBR 1007-2(b), the Debtor intends to continue the operation of its business and the management of its properties as a debtor and debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

31.   Pursuant to LBR 1007-2(b)(1), for the thirty (30) day period following the Petition Date, the Debtor intends to pay employees (exclusive of officers, directors, stockholders, partners, and members) approximately $30,697.81 weekly, for a total of $122,791.24.

xiv.   Payroll to Officers and Directors

32.   Pursuant to LBR 1007-2(b)(2), for the thirty (30) day period following the Petition Date, the Debtor intends to pay officers and directors approximately $6,915.27 payable weekly, for a total of $27,661.08.

xv.   Schedule of Receipts and Disbursements

33. In accordance with LBR 1007-2(b)(3), a schedule of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid is annexed hereto as **Exhibit D**.

**B. Summary of First Day Motions**

    a) <u>Debtor in Possession Financing and Cash Collateral Motion</u>

34. By this motion (the "<u>DIP Financing Motion</u>"), the Debtor requests entry of interim and final orders: (a) authorizing the Debtor to obtain post-petition financing (the "<u>DIP Facility</u>") from HS HK Acquisition, LLC (the "<u>DIP Lender</u>") pursuant to the terms of a certain debtor in possession lending agreement (the "<u>DIP Agreement</u>") and use Cash Collateral of JPMorgan Chase Bank, N.A. ("<u>Prepetition Lender</u>") pursuant to sections 361 and 363 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"); (b) approving the form of adequate protection provided to Prepetition Lender pursuant to Bankruptcy Code sections 361 and 363; (c) scheduling a final hearing ("<u>Final Hearing</u>") on the Motion; and (d) granting related relief.

35. The Debtor has an immediate need for additional working capital availability and use of Cash Collateral, including cash proceeds, to pay its ordinary business expenses, including, without limitation, payments to post-petition vendors, employee salaries, payroll, taxes and similar costs, and the payment of other costs and expenses of administering this Case. All of these requirements for use of cash must be met to preserve and maintain the Debtor's going-concern value for the benefit of all parties in interest.

36. Without access to post-petition financing, the Debtor will be unable to withstand any meaningful adjustment to collections of revenue that it projects. Without some working capital support, operating the business as a going concern until closing of the Sale Transaction, will be very challenging and will and jeopardize the Debtor's ability to sell its assets to the

detriment of all creditor constituencies. The Debtor has limited liquidity that is dependent on reliable collection of receivables. The DIP Facility will provide support for the thin liquidity in the event of poor collection experience during the postpetition period.

37. Without ability to borrow funds in accordance with the terms of the DIP Facility, and use such funds in accordance with the Budget, the Debtor would suffer immediate and irreparable harm by being forced to shut down its businesses, lay off employees and cease operations to the vast detriment of the Debtor, its estates and the stakeholders therein.

38. The Debtor and its agents contacted third-party factors and asset based lenders, as well as equity investors, to determine whether they would be interested in providing financing to the Debtor during the chapter 11 case. None expressed a willingness to do so. Further, the Prepetition Lender was unwilling to provide further extensions of credit on any basis in connection with this chapter 11 case. I believe that no third party lender would be willing to provide financing on terms nearly as attractive as those offered by the DIP Lender.

39. I have reviewed the DIP Financing Motion and believe that the facts stated therein are accurate to the best of my knowledge, information and belief. I further believe that the relief requested in the DIP Financing Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest, and will enable the Debtor to continue to operate its business in chapter 11 without disruption. Accordingly, on behalf of the Debtor, I respectfully submit that the DIP Financing Motion should be granted.

    b)  <u>Sale and Bidding Procedures Motion</u>

40. By this Motion, the Debtor requests entry of an order Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006: (A)(i) Establishing Bidding Procedures and Bid Protections in Connection with the Sale of Certain of

the Assets of the Debtor, (ii) Approving the Form and Manner of Notices, (iii) Approving the Asset Purchase Agreement Subject to Higher and Better Offers and (iv) Setting a Sale Hearing Date; and (B)(i) Approving the Sale of Certain Assets of the Debtor Free and Clear of Liens, Claims and Encumbrances, (ii) Authorizing the Assumption and Assignment of Certain Unexpired Leases and Executory Contracts.

41. The Debtor needs to sell its operations to maximize value for its estate. The current operations are unsustainable if the Debtor is required to service prepetition debt, including accounts payable. The Debtor proposes to sell substantially all assets to the highest and best bid attainable.

42. Prior to the Petition date, the Debtor determined that a sale, subject to higher and better offers, to Purchaser, was in the best interests of the Debtor's creditors and other stakeholders. Although the Debtor did not actively market the sale of its Assets prior to the Petition Date, the Debtor proposes to provide notice of the Sale Transaction through the Sale Notice to all of the Debtor's creditors and intends to publish notice of the Sale Transaction in Women's Wear Daily (online edition) and Crain's NY to canvas the rest of the marketplace and ensure that all potentially interested parties are informed of the Debtor's intent to sell its Assets and are able to participate in an auction if they desire. These efforts are designed to provide certainty that the Debtor will obtained the highest and best price possible for its assets.

43. I have reviewed the Sale and Bidding Procedures Motion and believe that the facts stated therein are accurate to the best of my knowledge, information and belief. I further believe that the relief requested in the Sale and Bidding Procedures Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest. Accordingly, on behalf of the Debtor, I respectfully submit that the Sale and Bidding Procedures Motion should be granted.

c) <u>Wage Motion</u>

44. In the Employee Wage Motion, the Debtor seeks entry of an order authorizing, but not requiring, it to pay or cause to be paid, in its sole discretion, all or a portion of the amounts owing (and associated costs) under or related to prepetition wages and expense reimbursement, in accordance with the terms of the Budget.

45. If the requested relief is not granted, the Debtor's relationship with its employees would be adversely impacted and there could well be irreparable harm to the employees' morale, dedication, confidence, and cooperation. The Debtor's business hinges on its relationship with its customers, and the ability to provide superior services is vital. The employees' support for the Debtor's efforts is critical to the success of these Chapter 11 cases. At this early stage, the Debtor simply cannot risk the substantial damage to its business that would result from any decline in its employees' morale attributable to the Debtor's failure to pay wages, salaries, benefits, and other similar items.

46. I believe that the relief requested in the Employee Wage Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to Chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Employee Wage Motion should be approved.

d) <u>Cash Management Motion</u>

47. By this motion (the "<u>Cash Management Motion</u>"), the Debtor seeks entry of interim and final orders (i) approving the use of two of its existing bank accounts (the "<u>Existing Bank Accounts</u>") and (ii) authorizing the continued use of existing business forms.

48. The Debtor manages its cash receipts, transfers, and disbursements and records such collections, transfers and disbursements through the Existing Bank Accounts. The Debtor

12

has collected receivables and maintained payroll accounts and operating accounts through the Existing Bank Accounts for an extended period of time. The Debtor believes that any confusion or disruption in the continuity of these pre-existing procedures would severely hamper the Debtor's ability to operate its business and marshal its assets in the most efficient manner available. This type of disruption would create adverse economic and operational consequences which would negatively affect the Debtor's ability to maximize value for its creditors. Each Existing Bank Account has less than $250,000 on deposit.

49. I have reviewed the Cash Management Motion and believe that the facts stated therein are accurate to the best of my knowledge, information and belief. I further believe that the relief requested in the Cash Management Motion is in the best interests of the Debtor's estates, its creditors, and all other parties in interest, and will enable the Debtor to continue to operate its business in chapter 11 without disruption. Accordingly, on behalf of the Debtor, I respectfully submit that the Cash Management Motion should be granted.

### C. Conclusion

50. The Debtor reserves the right to amend or supplement any of the attached schedules in the event additional information is obtained by the Debtor.

51. The Debtor believes that the protection of the Bankruptcy Code will enable it to maximize the value of its assets for the benefit of the estate and its creditors.

*/s/ Youssef Saadia*
Youssef Saadia, CFO

**Exhibit A**
**Twenty Largest General Unsecured Claims**

| Name of Creditor | Amount | Contingent, Unliquidated, or Disputed |
|---|---|---|
| Alpha Fortune<br>2 Floor, 42 Tai Nam<br>LiuShatin N.T., Hong Kong | $672,647.00 | N/A |
| SOFRA Inc.<br>40 West 37th Street, Suite 505<br>New York, NY 10018 | $260,823.04 | N/A |
| Nobel Textile<br>845 S. San Pedro Street<br>Los Angeles, CA 90014 | $257,701.50 | N/A |
| Romex Textiles, Inc.<br>785 E. 14th Place<br>Los Angeles, CA 90021 | $217,328.21 | N/A |
| KOOL GIRL Inc.<br>1640 McDonald Avenue<br>Brooklyn, NY 11230 | $207,425.47 | N/A |
| Richline Textiles, Inc.<br>8321 Canford Street<br>Pico Rivera, CA 90660 | $190,061.98 | N/A |
| San Louis Textile<br>2828 E. 12th Street, #103<br>Los Angeles, CA 90023 | $183,574.89 | N/A |
| Fabric Selection Inc.<br>800 East 14th Street<br>Los Angeles, CA 90021 | $152,860.41 | N/A |
| Bright Sino Trading Limited<br>2 Floor, 42 Tai Num<br>LiuShatin N.T., Hong Kong | $130,425.47 | N/A |

| | | |
|---|---|---|
| XL Fabrics<br>1510 Griffith Avenue<br>Los Angeles, CA 90021 | $113,616.13 | N/A |
| TEXCO Inc.<br>1710 S. Hooper Avenue<br>Los Angeles, CA 90021 | $110,600.74 | N/A |
| Manna Textiles Inc.<br>270 West 39th Street, 3rd Floor<br>New York, NY 10018 | $100,848.56 | N/A |
| Regency Fabric<br>1016 E. 14th Place<br>Los Angeles, CA 90021 | $76,195.65 | N/A |
| Standard Fabrics International<br>935 E. 12th Street<br>Los Angeles, CA 90021 | $75,018.24 | N/A |
| Samlev Fabrics<br>1931 Hooper Avenue<br>Los Angeles, CA 90011 | $59,957.01 | N/A |
| American Express<br>200 Vesey Street<br>New York, NY 10285-3106 | $59,697.04 | N/A |
| Matrix International Textiles<br>1362 South Bonnie Beach Place<br>Commerce, CA 90023 | $54,645.11 | N/A |
| City Textile Inc.<br>2030 E. 15th Street, Unit D<br>Los Angeles, CA 90021 | $52,655.36 | N/A |
| A Plus Fabrics, Inc.<br>3040 E. 12th Street<br>Los Angeles, CA 90023 | $51,467.73 | N/A |
| Vega Textiles<br>2751 S. Alameda Street<br>Los Angeles, CA 90058 | $47,258.67 | N/A |

**Exhibit B**
**Five Largest Secured Claims**

| Name of Creditor | Amount Secured | Value and Description of Collateral | Contingent, Unliquidated, or Disputed |
|---|---|---|---|
| JPMorgan Chase Bank, N.A. 1166 6th Avenue, 20th Floor New York, NY 10036 | $2,961,384.65 | $2,959,007.76 – Accounts, inventory, equipment, etc. | N/A |
| Novelty Textiles, Inc. c/o Doniger/Burroughs 603 Rose Avenue Venice, CA 90291 | $250,000.00 | $0.00 | N/A |

**Exhibit C**
**Summary of Debtor's Assets and Liabilities**

| Schedule Type | Assets | Liabilities |
| --- | --- | --- |
| A/B – Real Property | $0.00 | |
| A/B – Personal Property | $3,245,648.94 | |
| C – Property Claimed as Exempt | | |
| D – Creditors Holding Secured Claims | | $3,211,384.65 |
| E/F – Creditors Holding Priority Unsecured Claims | | $0.00 |
| E/F – Creditors Holdings Nonpriority Unsecured Claims | | $3,637,842.68 |
| **Total Assets & Liabilities:** | **$3,245,648.94** | **$6,846,227.33** |

# Exhibit D

## Schedule of Cash Receipts and Disbursements

| Week | | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending Friday | Open Cash.O.H | Week 1 22-Feb | Week 2 29-Feb | Week 3 7-Mar | Week 4 14-Mar | Week 5 21-Mar | Week 6 28-Mar | Week 7 4-Apr | Week 8 11-Apr | Week 9 18-Apr | Week 10 25-Apr | Week 11 2-May | Week 12 9-May | Week 13 16-May | Total |
| **Cash on Hand (beginning of Week)** | 15-Feb **20,000** | 20,000 | 5,925 | 53,936 | 71,533 | 100,098 | 71,736 | 67,546 | 44,130 | 66,168 | 40,791 | 221,145 | 364,163 | 248,315 | 20,000 |
| **Cash Receipts** | | | | | | | | | | | | | | | Net AR |
| Collections fm curr AR balanc 2/11 | | 112,328 | 245,789 | 444,142 | 344,826 | 171,003 | 127,630 | 96,776 | 5,564 | 24,458 | 6,774 | 772 | - | - | 1,580,062 |
| Collections fm on sales orders 2/11 | | - | 25,626 | 184 | 28,492 | 97,589 | 278,572 | 227,129 | 312,183 | 194,919 | 579,261 | 472,061 | 186,386 | 138,632 | 2,541,035 |
| Total | - | 112,328 | 271,415 | 444,327 | 373,319 | 268,592 | 406,202 | 323,904 | 317,747 | 219,378 | 586,035 | 472,833 | 186,386 | 138,632 | 4,121,097 |
| **Total Cash Available (before cash out)** | 20,000 | 132,328 | 277,340 | 498,263 | 444,852 | 368,690 | 477,938 | 391,450 | 361,878 | 285,545 | 626,826 | 693,977 | 550,549 | 386,948 | 4,141,097 |
| **Cash Paid Out** | | | | | | | | | | | | | | | |
| Payroll expenses (incl taxe) | | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 507,000 |
| Sales Commission | | | | | | | | 57,000 | | | | | | | 57,000 |
| I.B Consulting / "Merchandiser" | | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 3,654 | 47,502 |
| Supplies (office & oper.) | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 26,000 |
| Repairs & maintenance | | | | | | | | | | | | | | | - |
| VSR, and EDI (Software) | | | | 2,130 | | | | 2,130 | | | | 2,130 | | | 6,390 |
| Cars & travel | | 1,399 | 1,283 | 4,821 | 100 | 100 | 3,271 | 100 | 100 | 100 | 3,271 | 100 | 100 | 100 | 14,844 |
| Accounting & legal | | | | | | | 5,000 | | | | | | | | 5,000 |
| Rent | | | | 21,500 | | | | 21,500 | | | | 21,500 | | | 64,500 |
| IT | | | 2,500 | | | | 2,500 | | | | 2,500 | | | | 7,500 |
| Telephone | | | 787 | | | | 787 | | | | 787 | | | | 2,361 |
| AMEX | | 30,000 | | | | | 35,000 | | | | 35,000 | | | | 100,000 |
| Insurance | | 350 | 11,430 | 3,625 | | | 11,430 | 21,936 | 956 | | 11,720 | 11,430 | 2,480 | | 75,356 |
| Taxes "Company and Partners" | | | | | | 2,200 | | | | | | | | | 2,200 |
| Interest | | | 7,750 | | | | 7,750 | | | | 7,750 | | | | 23,250 |
| Domestic Labor Factory | | 50,000 | 50,000 | 150,000 | 100,000 | 100,000 | 150,000 | 50,000 | 100,000 | 50,000 | 150,000 | 100,000 | 100,000 | 100,000 | 1,250,000 |
| China Suppliers | | | 100,000 | 100,000 | 100,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 750,000 |
| Other fabric domestic AP & FedEx | | | | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 1,100,000 |
| Total | - | 126,403 | 218,404 | 426,730 | 344,754 | 296,954 | 410,392 | 347,320 | 295,710 | 244,754 | 405,682 | 329,814 | 297,234 | 294,754 | 4,038,904 |
| **Restructuring Fees** | | | | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | | 50,000 | | 50,000 |
| U.S Trustee | | | 5,000 | | | | | | | | | | 5,000 | | 10,000 |
| Total | - | - | 5,000 | - | - | - | - | - | - | - | - | - | 5,000 | 50,000 | 10,000 |
| **Total Cash Paid Out** | | 126,403 | 223,404 | 426,730 | 344,754 | 296,954 | 410,392 | 347,320 | 295,710 | 244,754 | 405,682 | 329,814 | 302,234 | 344,754 | 4,048,904 |
| **Cash Position (end of month)** | 20,000 | 5,925 | 53,936 | 71,533 | 100,098 | 71,736 | 67,546 | 44,130 | 66,168 | 40,791 | 221,145 | 364,163 | 248,315 | 42,194 | 92,194 |