**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st St., 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Maeghan J. McLoughlin

*Proposed Counsel to the Debtor and Debtor in*
  *Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                     :          Chapter 11
                                                          :
HOT SHOT HK, LLC,                                         :          Case No. 16-10449 (JLG)
                                                          :
                                                          :
                                   Debtor.                :
-------------------------------------------------------------x

**MOTION FOR ORDERS PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006: (A)(i)
ESTABLISHING BIDDING PROCEDURES AND BID PROTECTIONS IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF
THE DEBTOR, (ii) APPROVING THE FORM AND MANNER OF NOTICES, (iii)
APPROVING THE ASSET PURCHASE AGREEMENT SUBJECT TO HIGHER
AND BETTER OFFERS AND (iv) SETTING A SALE HEARING DATE; AND (B)(i)
APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE
DEBTOR FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (ii)
AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND
(iii) GRANTING RELATED RELIEF**

Hot Shot HK, LLC, the above-captioned debtor and debtor in possession (the

"Debtor" or "Seller"), by its proposed attorneys, Klestadt Winters Jureller Southard &

Stevens, LLP, hereby moves (the "Motion") for entry of orders:

      a.      Substantially in the form attached hereto as **Exhibit A** (the "Bidding
Procedures Order") (a) establishing bidding procedures and bid
protections (the "Bidding Procedures"), (b) approving the form and
manner of notices thereof (the "Bidding Procedures Notice"),

1

      b.      Substantially in the form attached hereto as **Exhibit B** (the "Sale Order") (a) approving the Asset Purchase Agreement (the "Purchase Agreement"), substantially in the form attached hereto as **Exhibit C**, by and between the Debtor and HS HK Acquisition LLC (the "Purchaser") dated as of February 26, 2016, pursuant to which the Debtor proposes to sell substantially all of its assets to the Purchaser free and clear of any and all liens, claims and encumbrances, subject to higher and better offers (the "Sale Transaction"), (b) approving certain procedures with respect to the Debtor's assumption and assignment of certain executory contracts and unexpired leases, and approving the form and manner of notice of assumption and assignment of executory contracts substantially in the form attached hereto as **Exhibit D**, (c) approving the sale of the Assets (as defined in the Purchase Agreement) free and clear of liens, claims and encumbrances, (d) setting a hearing no later than April 12, 2016 (the "Sale Hearing") to consider approval of the Sale Transaction, (e) approving the form and manner of notice of the sale of the Debtor's Assets, Bidding Procedures, and Auction related thereto (the "Sale Notice"), substantially in the form attached hereto as **Exhibit E**, and (f) granting related relief.

In support of the Motion, the Debtor incorporates the statements contained in the Declaration of Youssef Saadia (the "Saadia Declaration") and respectfully represents and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 363 and 365 of Title 11, United States Code (the "Bankruptcy Code") and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A**.      **Organizational Structure.**

2.      The Debtor is a limited liability company organized under the laws of the state of New York. The Debtor was founded in 2009 and is headquartered in leased premises in

midtown Manhattan in New York, New York.  The Debtor has 3 members, who own the

Debtor as follows: 45% by Joseph Saadia, 37% by Marko Elenhorn, and 18% by Youssef

Saadia.

B.      **Nature of the Debtor's Business.**

3.      The Debtor is a mid-sized wholesaler in the women's apparel and outerwear

industry.

4.      The Debtor produces fashion forward garments with an emphasis on fun and

colorful clothing for juniors and girls.  Its' retail partners include Urban Outfitters, Macy's,

Pacsun, Charlotte Russe, and Rue21, to name a few.

5.      The Debtor sources both domestic and international fabrics.  The Debtor

manufactures the majority of its clothing in its own factories located in Manhattan.

C.      **The Bankruptcy Case.**

6.      On February 26, 2016 (the "Petition Date"), the Debtor commenced this case

by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code").

7.      The Debtor continues in possession of its property and continues to operate

and manage its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of

the Bankruptcy Code.

8.      No trustee or committee has been appointed in this case.

9.      The Debtor has determined, in its business judgment, that value for the

Debtor's creditors and other stakeholders will be maximized by a sale of the Debtor's assets

to a financially viable purchaser.

**D.**     **Marketing and Sale Process**

10.     The Purchaser is owned by Joseph Saadia, Youssef Saadia, Marko Elenhorn, and Victor Lalo.  Prior to the Petition date, the Debtor determined that a sale, subject to higher and better offers, to Purchaser, was in the best interests of the Debtor's creditors and other stakeholders.  Accordingly, the Debtor entered into the Purchase Agreement between the Debtor and the Purchaser, pursuant to which the Purchaser has agreed to acquire the Assets on the terms and conditions specified therein.  The Sale Transaction with Purchaser is subject to higher and better offers as set forth herein.

11.     Because the Debtor lacks sufficient cash to operate and satisfy its post-petition obligations to customers, suppliers, and other creditors through the anticipated closing of the sale of substantially all of its assets, the Debtor has sought approval from the Court to obtain debtor in possession financing ("DIP Financing") from the Purchaser.

12.     The Debtor needs to complete the sale process and close a sale to the Purchaser or any successful competing bidder on the proposed timeline to avoid defaulting on the DIP Financing and/or running out of funds to operate.  It is therefore critical that the sale process be completed promptly to ensure that the sale, whether to the Purchaser or any successful competing bidder, is approved and able to close before the Debtor runs out of availability under the DIP Financing.  To that end, the Debtor will request that a hearing on the proposed Bidding Procedures (defined below) be scheduled for no later than March 10, 2016.

13.     The Purchase Price is comprised of (a) $1,400,000.00 cash, (b) satisfaction of up to $400,000.00 in DIP Financing (as defined below), and (c) the assumption of the unsatisfied deficiency claim of Prepetition Lender pursuant to a promissory note (the "Closing Note") issued by Purchaser at the Closing and expected to be not less than

4

$1,500,000.00 as of the Closing. Pursuant to the Purchase Agreement, approximately $1,400,000 of cash will be used to pay down the secured debt of JPMorgan Chase, N.A. ("Prepetition Lender"), and up to approximately $400,000 will be made available as DIP Financing, as further described above.

14.     Although the Debtor did not actively market the sale of its Assets prior to the Petition Date, the Debtor will provide notice of the Sale Transaction through the Sale Notice to all of the Debtor's creditors and intends to publish notice of the Sale Transaction in Women's Wear Daily (online edition) and Crain's NY to canvas the rest of the marketplace and ensure that all potentially interested parties are informed of the Debtor's intent to sell its Assets and are able to participate in an auction. These efforts will provide certainty that the Debtor has obtained the highest and best price possible for its assets.

15.     By this Motion, the Debtor seeks approval of a process to market and sell its business and assets through a section 363 asset sale process, which process will include a stalking horse bid from the Purchaser.

## RELIEF REQUESTED

**A.     The Proposed Sale**

16.     The Purchase Agreement sets forth the terms of the sale of substantially all of the Debtor's assets and business and related transactions, subject to higher and better offers, free and clear of liens, claims, interests and encumbrances. The following is a summary of certain salient provisions of the Purchase Agreement and is qualified entirely by reference to the Purchase Agreement itself.[1]

---

[1] The following summary of the Purchase Agreement is provided for the convenience of the Court and the parties in interest. A copy of the Purchase Agreement is attached hereto as **Exhibit C**. To the extent that there are any discrepancies between this summary and the Purchase Agreement, the terms and language of the Purchase Agreement shall govern. Unless defined herein, capitalized terms defined in the Purchase Agreement shall have the meanings ascribed to them therein.

(a)   <u>Purchase Price</u>.  In consideration for the Assets, the purchase price for the Assets is a total of approximately $3,300,000.000, comprised of (a) $1,400,000.00 cash, (b) satisfaction of up to $400,000.00 in DIP Financing (as defined below), and (c) the Closing Note issued by Purchaser at the Closing and expected to be not less than $1,500,000.00 as of the Closing.  The Purchase Price will be allocated as follows: (i) $1,400,000 shall be used to satisfy the senior secured claims of Prepetition Lender, and (ii) up to $400,000 shall be made available to Seller as DIP Financing pursuant to a financing facility (the "<u>DIP Financing Facility</u>") and utilized by Seller to pay its own closing costs and expenses.  The cash portion of the Purchase Price shall be payable at the Closing by wire transfer or other immediately available funds.

(b)   <u>Purchased Assets</u>.   Under the Purchase Agreement, the Seller will transfer all right, title and interest in substantially all of its assets (described with more particularity in the Purchase Agreement as Assets), including all of the Seller's tangible and intangible assets, including but not limited to, cash, receivables, goodwill, purchase orders, samples, molds, models, designs, patents, trademarks, trade names, copyrights, other intellectual property, furniture, fixtures and equipment, claims and causes of action, customer lists and related interests, books and records, internet sites and domain names, fax and telephone numbers, business relationships and general intangibles.

(c)   <u>Assumed Liabilities</u>.   Purchaser shall assume and shall subsequently observe and honor, only the going-forward obligations (i.e., obligations arising and accruing on or after the Closing Date) of Seller under the Client Contracts and those contracts and Accounts Payable set forth in Section 1.5 of the Disclosure Schedule which are duly assigned to Purchaser in accordance with the Purchase Agreement.  Notwithstanding the foregoing, the Purchaser may choose to assume certain of the Debtor's obligations that it determines in its business judgment are necessary to complete the Sale Transaction. For the sake of clarity, the parties acknowledge that the Purchaser will assume the Client Contracts and IP Agreements in accordance with the requirements of the applicable provisions of the Bankruptcy Code and subject to the procedures set forth in the Sale Order.

6

(d)     Representations and Warranties.
The Debtor has represented and warranted that it is the
title owner to the Assets, and, subject to approval by the
Court, they have the requisite legal authority to sell and
assign such assets and Contracts, together with
substantially all of its assets and business to Purchaser, and
that all of the other representations and warranties
provided under the Purchase Agreement are true and
correct as detailed more fully in Article 2.1 of the Purchase
Agreement.  Purchaser has represented and warranted that
it is a limited liability company duly formed under the
laws of the State of New York and subject to satisfaction
of the conditions and requirements under the Purchase
Agreement, has the requisite power, authority, and
financial capability to consummate the transactions
contemplated hereunder, and that all of the other
representations and warranties provided under the
Purchase Agreement are true and correct as detailed more
fully in Article 2.2 of the Purchase Agreement.

(e)     Termination.     The parties may
terminate this Agreement as provided below (whether
before or after the entry of the Bidding Procedures Order
and/or the Sale Order): (a) the Purchaser and the Debtor
may terminate the Purchase Agreement by mutual written
consent at any time prior to the Closing; (b) the Purchaser
may terminate the Purchase Agreement by giving written
notice to the Seller at any time prior to the Closing (i) in
the event the Seller has breached any representation,
warranty, or covenant contained in this Agreement and
such breach has caused or is reasonably likely to cause a
Material Adverse Effect, or (ii) if the Closing shall not
have occurred on or before the Closing Date because any
of the conditions precedent set forth in Sections 6.2
through 6.5 hereof have not been satisfied in full; (c) the
Seller may terminate this Agreement by giving written
notice to the Purchaser at any time prior to the Closing (i)
in the event the Purchaser has breached any
representation, warranty, or covenant contained in this
Agreement and such breach has caused or is reasonably
likely to cause a Material Adverse Effect, or (ii) if the
Closing shall not have occurred on or before the Closing
Date because any of the conditions precedent set forth in
Sections 6.2 and 6.3 hereof have not been satisfied in full;
(d) the Purchaser may terminate this Agreement by giving
written notice to Seller if the Closing shall not have
occurred on or before 5:00 p.m. on the fifteenth day after

7

the Sale Order has been entered; (e) the Purchaser may terminate this Agreement by giving written notice to Seller if (i) the Bankruptcy Court has not entered the Bidding Procedures Order on or before March 15, 2016 or (ii) the Bidding Procedures Order has been entered but is stayed, withdrawn, or rescinded as of such date; (f) the Purchaser may terminate this Agreement by giving written notice to Seller if (i) the Bankruptcy Court has not entered the Sale Order on or before April 15, 2016 or (ii) on or after April 22, 2016 if a legal proceeding shall be pending pursuant to which a Person has appealed the Sale Order, or if the Sale Order shall have been withdrawn or rescinded; (g) the Purchaser may terminate this Agreement by giving written notice to the Debtor if an order has been entered dismissing the Bankruptcy Case, converting the Bankruptcy Case to a Chapter 7 case or if the Debtor files a motion or other pleading seeking the dismissal or conversion of the Bankruptcy Case under Section 1112 of the Bankruptcy Code or otherwise; (h) the Purchaser or the Seller may terminate this Agreement in the event that any Law or order becomes effective restraining, enjoining, or otherwise prohibiting or making illegal the consummation of the transactions contemplated by this Agreement; (i) the Seller may terminate this Agreement at any time after the Bankruptcy Court approves an Alternate Transaction, or Purchaser may terminate this Agreement upon the closing of an Alternate Transaction; (j) the Purchaser may terminate this Agreement at any time after the appointment of a Chapter 7 trustee or an examiner with expanded powers in the Bankruptcy Case; (k) the Purchaser may terminate this Agreement at any time in the event the Bankruptcy Court does not approve the Expense Reimbursement; (l) the Purchaser may terminate this Agreement in the event the Bankruptcy Court grants relief from the automatic stay to any party to permit foreclosure or the exercise of other remedies on any material assets of Seller, other than any such relief from automatic stay granted to Purchaser under a DIP Financing Facility; (m) the Purchaser may terminate this Agreement in the event that the Seller modifies, alters or amends this Agreement without the consent of Purchaser, or in the event that the Seller consents to any such modification, alteration or amendment; or (n) in the event that a DIP Financing Facility is entered into, Purchaser may terminate this Agreement if an event of default under the DIP Financing Facility has occurred and has not been cured or waived by

8

Purchaser in accordance with the terms of such DIP
Financing Facility documents.

17.     The Sale Transaction provides for the continuation of business operations,
preservation of attendant jobs to the extent employees of the Debtor become employees of
the Purchaser, and maximization of value for the benefit of the Debtor, its creditors and the
estate.

**B.     Extraordinary Provisions**

18.     In accordance with General Order M-383, In the Matter of: Adoption of
Amended Guidelines for the Conduct of Asset Sales, dated November 18, 2009 ("General
Order M-383"), the Debtor discloses the following Extraordinary Provisions provided for in
the Purchase Agreement:

(a)     Sale to Insider.    The Debtor
proposes to sell substantially all of its assets, subject to
higher or otherwise better bids, to the Purchaser, which is
majority owned by current insiders and members of the
Debtor, Joseph Saadia, Youssef Saadia and Marko
Elenhorn.   Mr. Victor Lalo is also a member of the
Purchaser and is not a current member or insider of the
Debtor.  Measures have been taken to ensure the fairness
of the sale process and the proposed Sale Transaction. In
negotiating the Purchase Agreement, the Purchaser, on the
one hand, and the Debtor, on the other hand, each were
represented by separate counsel.  The Purchase Agreement
specifically provides for overbids to ensure that the Sale
pursuant to the proposed Bid Procedures will realize the
highest or best price for the Debtor's assets.

(b)     Agreement with Key Employees:
Purchaser's obligation to consummate the Closing
hereunder is not contingent upon entry into employment
agreements with the existing management team of the
Seller (the "Key Employees").   However, it is
contemplated that potentially certain Key Employees shall
be hired as employees of Purchaser. The terms and
conditions of the continued employment of the Key
Employees may be detailed in letters of offer of

9

employment to be entered into between the Purchaser and the Key Employees on terms as shall be mutually acceptable to Purchaser and such Key Employees, (the "Employment Letters").

(c)    Use of Proceeds: The Purchase Price will be allocated as follows: (i) $1,400,000 in cash shall be used to partially satisfy the secured claims of Prepetition Lender, and (ii) up to $400,000 shall be made available to Seller as DIP Financing pursuant to a DIP Financing Facility and utilized by Seller to pay its own closing costs and expenses.

(d)    Record Retention: After the Closing Date, the Purchaser shall provide the Debtor and its representatives reasonable access to the books and records of Seller included in the Assets during normal business hours and on reasonable prior notice, to enable the Seller to prepare tax returns, deal with tax audits or collect Accounts Receivable. The Debtor believes these provisions are sufficient to allow the Debtor to administer its estate.

(e)    Successor Liability: The proposed form of Sale Order contains findings and provisions limiting the Purchaser's successor liability. The parties intend that the transfer of the Assets will not subject Purchaser to any liability other than any Assumed Liabilities. The proposed finding in the Sale Order authorizing the Sale to be made free and clear of successor liability claims complies with applicable principles of sales conducted pursuant to Section 363(f) of the Bankruptcy Code and applicable non-bankruptcy law.

(f)    Relief from Bankruptcy Rule 6004(h): The proposed form of Sale Order contains a waiver of the stay imposed by Bankruptcy Rule 6004(h). The Debtor submits such relief is appropriate under the circumstances.

## PROPOSED BIDDING PROCEDURES, AUCTION AND AUCTION PROCEDURES

19.    Consistent with the Purchase Agreement, the Debtor is proposing the Bidding Procedures, which are designed to maximize the value of the Assets for the Debtor's estate, creditors and other interested parties. Specifically, as discussed in more detail below,

10

Purchaser will enter into the Purchase Agreement, which is subject to higher and better offers. In that regard, Purchaser has expended considerable time, effort and resources conducting due diligence and negotiating the Purchase Agreement.

20. The Debtor proposes that competing offers ("Competing Offers") for the Assets be governed by the following Bidding Procedures:[2]

> a) Any entity that wishes to make a bid for Assets (a "Potential Bidder") must provide the Debtor (and any statutory committee) with sufficient and adequate information to demonstrate that such Potential Bidder (i) has the financial wherewithal and ability to consummate the Sale Transaction including evidence of adequate financial resources, (ii) can provide all non-debtor contracting parties to the Client Contracts with adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code; (iii) will be on substantially the same or better terms and conditions as the Purchase Agreement except for price; (iv) will require the payment of a minimum cash purchase price to the Debtor of not less than $1,900,000.00 (the "Minimum Bid") and assumption of debt such that total bid value shall be at least $3,400,000.00; (v) will be accompanied by an earnest money deposit of 5% of the aggregate purchase price set forth in any Modified Purchase Agreement, plus the amount of the Expense Reimbursement (defined herein). Any bid satisfying such criteria shall be designated as a "Qualified Bid" and the bidder a "Qualified Bidder." Except as provided for in the Purchase Agreement, the bid must not contain any contingencies of any kind, including, but not limited to (a) obtaining financing or shareholder, board of directors or other approval, or (b) the outcome or completion of due diligence. Each Potential Bidder must also affirmatively acknowledge that the Potential Bidder (x) had an opportunity to conduct due diligence regarding the Assets prior to making its offer and does not require further due diligence, (y) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and (z) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or

---

[2] The summary description of the Bidding Procedures provided herein is provided for the convenience of the Court and parties in interest. To the extent that there are any discrepancies between this summary and the Bidding Procedures Order, the terms and language of the Bidding Procedures Order shall govern. Unless otherwise defined herein, capitalized terms defined in the Bidding Procedures shall have the meaning ascribed to them in the Bidding Procedures Order or the Purchase Agreement.

otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures.

b)      Competing offers (each a "Competing Offer") must (a) be in writing and (b) be received by Sean C. Southard and Maeghan J. McLoughlin of Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, New York 10036 so that such bid is received no later than April 4, 2016 at 5:00 p.m. (the "Competing Offer Deadline"). Parties who do not submit Competing Offers by the Competing Offer Deadline shall not be permitted to participate at the Auction.

c)      Competing Offers must be accompanied by a good faith deposit in the amount of 5% of the aggregate purchase price set forth in any Modified Purchase Agreement, plus the amount of the Expense Reimbursement, in the form of in the form of wire transfer or a certified check payable to KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP ESCROW MANAGEMENT ACCOUNT.  All such deposits shall be retained by the Debtor pending the hearing to consider the Sale Motion and shall be returned to a Potential Bidder (x) as soon as practicable if the Potential Bidder is not determined to be a Qualified Bidder or (y) no later than five (5) business days after entry of the Sale Order if the Potential Bidder is deemed to be a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not the Successful Bidder or the Backup Bidder; provided, however, that in the event the Purchaser is not the Successful Bidder, its Deposit shall be returned to it promptly upon termination of the Purchase Agreement, but in no event later than five (5) business days from the date of that termination.  The Debtor will maintain any Deposit in a non-interest bearing account.

d)      Any Competing Offer by a Qualified Bidder conforming to the within requirements shall be considered at the auction to be held at 200 West 41st. St., 17th Floor, New York, New York 10036 on **April 8, 2016, starting at 10:00 a.m. (EST)**, or in such manner and at such alternative location as the Debtor may determine or the Court may direct (the "Auction").

e)      The Debtor shall, after the Competing Offer Deadline and prior to the Auction, evaluate all bids received, and determine which bid reflects the highest or best offer for the Assets.  The Debtor shall announce such determination at the commencement of the Auction and then the Debtor shall conduct the Auction among the parties submitting Competing Offers to determine if any higher or better offer might be obtained.  Any further bids made at the

Auction shall be in increments of at least $100,000 greater than the preceding bid.

f)      If there is a successful Competing Offer for the Assets, such successful bidder (the "Successful Bidder") shall have such rights and responsibilities of the Purchaser, as set forth in the Modified Purchase Agreement, or the Purchase Agreement, as applicable with appropriate modifications for (i) the identity of the successful bidder and (ii) the purchase price as the same shall have been increased at the Auction (such transaction is an "Alternative Transaction").

g)      In the event that the Court enters a Final Order approving an Alternative Transaction, then the Purchaser shall be entitled to $20,000 of the actual and documented out-of-pocket fees and expenses incurred by Purchaser in the course of negotiating, drafting and approving the Purchase, Agreement and the Sale Transaction documents (the "Expense Reimbursement").

h)      The claims of Purchaser to the Expense Reimbursement shall constitute an administrative expense against the Debtor's bankruptcy estate under the applicable provisions of the Bankruptcy Code.

i)      In the event that a Competing Offer is the Successful Bidder and such Successful Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtor (but not as liquidated damages, the Debtor reserving the right to pursue all remedies that may be available to it) and the Debtor shall be free to consummate the proposed transaction with the next highest bidder or otherwise best (the "Backup Bidder") at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Bankruptcy Court.

j)      All bids for the purchase of the Debtor's assets shall be subject to approval of the Bankruptcy Court.

k)      No bids shall be considered by the Debtor or the Bankruptcy Court unless a party submitted a Competing Offer in accordance with the Bidding Procedures and participated in the Auction. The Debtor, in its absolute discretion, may reject any Competing Offers not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy

Rules of the Court, or contrary to the best interests of the Debtor and parties of interest.

l)      All bids (other than those of the Successful Bidder and Backup Bidder) are irrevocable until the earlier of (A) ninety (90) days following entry of the Sale Order (defined below) and (B) closing with the Successful Bidder.

m)      All bids are subject to such other terms and conditions as are announced by the Debtor at the outset of the Auction.

n)      Parties interested in making Competing Offers are permitted to conduct diligence, subject to entry into a confidentiality agreement in form and substance acceptable to the Debtor.

## BIDDING PROTECTIONS

21.      The proposed Purchase Agreement contemplates the payment of the Expense Reimbursement in certain circumstances.  The Debtor requests the Court grant the proposed Expense Reimbursement administrative expense priority pursuant to Bankruptcy Code 503(b) and 507(b), which shall be payable solely from the first proceeds of an Alternate Transaction. The Purchase Agreement provides that if the proposed Expense Reimbursement is not approved by the Court, the Purchaser shall have the right, but not the obligation, to not enter into the Purchase Agreement and none of the parties shall have any further obligations to the other.

22.      The Debtor submits that (a) approval of the proposed Expense Reimbursement is an integral part of the Purchase Agreement , (b) in the absence of the Debtor's obligation to pay the Expense Reimbursement, Purchaser will not enter into the Purchase Agreement, (c) the entry into the Purchase Agreement is necessary for the preservation of the Debtor's estate and is beneficial to the Debtor, its estate, creditors and other parties in interest, and (d) the Expense Reimbursement is reasonable in relation to Purchaser's efforts and the amount of consideration contemplated by the Purchase Agreement .

14

23.      The efforts of the Purchaser have increased the chances that the Debtor will receive the highest or otherwise best offer for the Assets by establishing a minimum bid for other bidders, subjecting the Assets to an open auction and serving as a catalyst for other potential or actual bidders.  Thus, the Expense Reimbursement benefits the Debtor, its estate, its creditors and all other parties in interest.

24.      The Debtor requests that the Court approve and authorize payment of the Expense Reimbursement pursuant to the terms and conditions of the Purchase Agreement.

## ASSUMPTION AND ASSIGNMENT AND REJECTION OF EXECUTORY CONTRACTS AND LEASES

### A.      Assigned Contracts

25.      In connection with the Sale Transaction, the Debtor seeks authority under section 365 of the Bankruptcy Code to (a) assume and assign the Assigned Contracts, and (b) execute and deliver to the Purchaser (or the Successful Bidder, as the case may be) such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts as of the date of the Closing on the Purchase Agreement (and expressly subject to Closing).

26.      By and through this Motion, the Debtor is seeking authority to assume any and all Assigned Contracts (as defined in the Purchase Agreement) following and subject to the Closing, and to assign all such contracts to the Purchaser.  The Debtor seeks the authority to assume and assign to the Purchaser any and all of the Assigned Contracts which the Purchaser in its sole discretion elects to assume and gives notice of the same to the Debtor.

27.      Under the Purchase Agreement, the Purchaser is not liable as to any obligation under or with respect to any Assigned Contract arising on account of or with respect to any time prior to the Closing other than the Cure Amount.

15

28.    To effectuate the assumption/assignment process, the Debtor proposes to serve a notice on the non-debtor parties to the Assigned Contracts of the potential assumption and assignment of the Assigned Contracts (the "Assignment Notice"), substantially in the form annexed hereto as **Exhibit D**, advising each such party of the Debtor's interest to assume and assign such executory contract. The Assignment Notice shall be served no later than five (5) business days following the entry of the Bidding Procedures Order. The list of Assigned Contracts attached to the Assignment Notice, which comprises all of the Debtor's executory contracts, except for those specifically excluded from the Assets, and sets forth (a) the name and address of the counterparties to the executory contracts proposed to be assumed and assigned to the Purchaser or its designee; (b) the nature of the executory contract; and (c) the amount of any cure costs that the Debtor believes to be due and owing as reflected on its books and records (the "Cure Amount"). Purchaser may elect, through the date of closing, to exclude any contract from the Assigned Contracts.

29.    Under the terms of the Purchase Agreement, the Purchaser is responsible for paying cure costs, if any, under any Assigned Contracts that are ultimately assumed and assigned to Purchaser.

30.    Any non-debtor party who objects to its Cure Amount set forth in its Assignment Notices must file an objection to the Cure Amount with respect to such Assigned Contract, state with specificity the nature of the objection and the amount of the alleged Cure Amount and include appropriate supporting documentation demonstrating the calculation of the cure amounts as claimed not later than the Cure Objection Deadline as provided for below. Any such objections must be (a) filed with the Court and (b) served upon (i) the proposed attorneys for the Debtor, Klestadt & Winters Jureller Southard & Stevens, LLP, 200

16

West 41st St., 17th Floor, New York, New York 10036 (Attn: Sean C. Southard. and Maeghan J. McLoughlin), (ii) Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Paul Schwartzberg) and (iii) the attorneys for the Purchaser, The Law Offices of Rachel Blumenfeld, 26 Court Street, Brooklyn, NY 11242, so as to be actually received no later than 12:00 Noon (EST), seven (7) days prior to the Sale Hearing (the "Cure Objection Deadline").

31.    If no objection to the Cure Amounts is timely received in accordance with the preceding paragraph, or if a timely objection is received but is not in compliance with the foregoing requirements, any non-debtor party to a Assigned Contract shall be barred and permanently enjoined from asserting any amounts in excess of the Cure Amount set forth in its Assignment Notices.  Any objection to any Cure Amount shall be heard at the Sale Hearing.

32.    In an effort to provide the most up-to-date information to non-debtor parties to the Assigned Contracts, in the event the Purchaser is not the Successful Bidder at the Auction, the Debtor will use its reasonable best efforts to provide non-debtor parties to the Assigned Contracts with the identity of the Successful Bidder prior to the Sale Hearing. Otherwise, the non-debtor parties to the Assigned Contracts may wish to plan to attend the Sale Hearing.

33.    Any non-debtor party to an Assigned Contract shall have the right to request adequate assurance of performance by the Purchaser of such a Assigned Contract either by contacting the Purchaser through its attorneys, or filing, prior to the deadline for objecting to the proposed Sale Order, such request must be filed with the Court and served upon (i) the

attorneys for the Debtor, Klestadt, Winters, Jureller Southard & Stevens LLP, 200 West 41st St., 17th Floor, New York, New York 10036 (Attn: Sean C. Southard. and Maeghan J. McLoughlin), (ii) the attorneys for the Committee, if one is appointed; (iii) The Office of the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Paul Schwartzberg), and (iv) the attorneys for the Purchaser, The Law Offices of Rachel Blumenfeld, 26 Court Street, Brooklyn, NY 11242, so as to be actually received no later than 12:00 Noon (EST), seven (7) days prior to the Sale Hearing, indicating what adequate assurance it requires from the Purchaser.

34.     If no such requests for adequate assurance are timely made or filed, the Purchaser shall be deemed to have provided adequate assurance as required by section 365(f)(2)(B) of the Bankruptcy Code.  If any such requests are filed, the Court, at the Sale Hearing, shall determine whether the Purchaser has provided adequate assurance as required by section 365(f)(2)(B) of the Bankruptcy Code.

35.     The Debtor believes that those procedures and deadlines are fair and reasonable, and will provide sufficient notice to the non-debtor parties to the Assigned Contracts.  These procedures are designed to provide certainty to the Debtor and the non-debtor parties to the Assigned Contracts regarding their obligations and rights in respect of the Cure Amounts.  Accordingly, the Debtor requests that the Court approve the foregoing procedures and deadlines.

## NOTICE OF SALE, AUCTION AND BIDDING PROCEDURES

36.     The Debtor, no later than five (5) business days after entry of the Bidding Procedures Order, will serve a copy of this Motion, the Bidding Procedures Order, the proposed Sale Order and all exhibits to such orders upon the following persons by first-class mail, postage prepaid: (i) the Office of the United States Trustee; (ii) the attorneys for the

18

Committee; if any (iii) the attorneys for the Purchaser; (iv) all counterparties to the Assigned

Contracts; (v) all known persons holding a lien on any of the Assets; (vi) all taxing

authorities that have jurisdiction over the Assets; and (vii) parties listed on the Debtor's list

of twenty (20) largest creditors (collectively, the "Bidding Procedures Parties").

37.     In addition, no later than five (5) business days after entry of the Bidding

Procedures Order, the Debtor shall cause the form of Sale Notice, a proposed form of which

is annexed hereto as **Exhibit E**, to be (i) published in Women's Wear Daily in the electronic

edition; (ii) published in Crain's NY; (iii) served upon the Bidding Procedures Parties, and

(iv) served upon all known creditors and all known parties in interest in this chapter 11 case

(collectively, the "Auction Notice Parties").

38.     The Debtor believes that the foregoing notice to the Auction Notice Parties is

sufficient to provide effective notice of the Bidding Procedures, the Auction and the proposed

Sale to potentially interested parties in a manner designed to maximize the chance of

obtaining the broadest possible participation in the Auction while minimizing the costs to the

estate.  Accordingly, the Debtor requests that the Court find that notice in this manner is

sufficient and that no further notice of the Auction, the Bidding Procedures or the proposed

Sale is required.

## BASIS FOR RELIEF REQUESTED

### A.     The Proposed Sale is Within the Debtor's Sound Business Judgment and Should Therefore Be Approved

39.     The Debtor submits that ample authority exists for the approval of the Sale

Transaction to the Purchaser pursuant to the Purchase Agreement, or to such other purchaser

submitting a higher and better offer for the Assets.  Section 363(b) of the Bankruptcy Code

permits a debtor to sell assets outside the ordinary course of its business.  That section

provides in pertinent part, "[t]he trustee,[3] after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b). While Section 363(b) does not provide any standards to be applied to a debtor's request to sell assets, a wide body of case law has evolved containing the judicial standards governing sales of assets.

40.     In In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), one of the seminal and most widely followed cases dealing with asset sales, the Second Circuit determined that a sale of assets could be approved if the debtor could demonstrate an "articulated business justification" for the sale.  722 F.2d at 1070.  The Court further held that the factors to be considered in determining whether a sound business reason exists include the following:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, *most importantly perhaps, whether the asset is increasing or decreasing in value.*

Id. at 1071 (emphasis supplied).

41.     The Lionel decision has been widely accepted and applied by numerous other courts facing a debtor's request to sell assets, including requests to approve a sale of substantially all of the assets of a debtor's estate.  See, e.g., In re Fairfield Sentry Ltd., 539 B.R. 658, 668 (Bankr. S.D.N.Y. 2015); In re GSC, Inc., 453 B.R. 132, 155–56 (Bankr. S.D.N.Y. 2011); In re Innkeepers USA Trust, 448 B.R. 131, 146 (Bankr. S.D.N.Y. 2011); In re CPJK, LLC, 496 B.R. 290, 304 (Bankr. E.D.N.Y. 2011); In re Boston Generating, LLC,

---

[3]Pursuant to Section 1107(a) of the Bankruptcy Code, the debtor in possession has all of the powers of a trustee (except the power to investigate the debtor's own financial affairs).

440 B.R. 302, 321–22 (Bankr. S.D.N.Y. 2010).  As will be demonstrated below, application

of the above-listed factors demonstrates that approval of the APA is warranted at this time.

42.    In addition to requiring sound business reasons to approve a sale pursuant to

section 363(b) of the Bankruptcy Code, many courts have required a showing that the (i)

proper notice has been given to all creditors and interested parties, (ii) the proposed sale price

is fair and reasonable; and (iii) the purchaser is proceeding in good faith.  See, e.g., In re

Boston Generating, LLC, 440 B.R. at 330 (citing In re General Motors Corp., 407 B.R. 463,

493–494 (Bankr. S.D.N.Y. 2009).

43.    The Debtor and Purchaser negotiated in good faith, at arms' length, and with a

view towards maximizing the value of the Debtor's estate for creditors.  In addition, the

Debtor and the Purchaser representatives negotiated with the Prepetition Lender.

44.    The Debtor is confident that the Purchase Price is the best achievable under

the present circumstances.  Nonetheless, the Purchase Agreement is subject to higher and

better offers, thereby ensuring that the best possible offer has been or will be received.

45.    Many courts require that "fair and accurate notice" be given of the proposed

sale under section 363(b) of the Bankruptcy Code.  See, e.g., In re MF Global, 467 B.R. 726,

730 (Bankr. S.D.N.Y. 2012); In re Delaware & Hudson Ry., 124 B.R. 169, 176 (D. Del.

1991).  Fair and accurate notice should inform all interested parties of the liquidation of the

debtor's business; disclose accurately the terms of the sale; explain the effect of the sale upon

the debtor's business; and explain why the sale is in the best interests of the debtor's estate.

Delaware & Hudson, 124 B.R. at 180.

46.     The Debtor submits that the notice given here alerted parties in interest to the sale contemplated by the Purchase Agreement, described and explained all material terms thereof, and explained the effect of the sale on the Debtor's business.

**B.      The Purchaser is a Good Faith Purchaser and is Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

47.     Section 363(m) of the Bankruptcy Code provides:   "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."  11 U.S.C. § 363(m); see also In re Motors Liquidation Co., 430 B.R. 65, 78 (S.D.N.Y. 2010) ("Section 363(m) limits the appealability of a Section 363 sale order that has been consummated to the issue of the purchaser's good faith").

48.     Although the Bankruptcy Code does not define "good faith," in In re Colony Hill Assocs., 111 F.3d 269 (2d Cir. 1997) the Second Circuit held that:

> The "good faith" component of the test under § 363(m) speaks to the equity of [the bidder's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

111 F.3d at 276 (internal citations omitted); In re GSC, Inc., 453 B.R. at 180 (citing Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380 (2d Cir. 1997)) ("Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings . . . and the relevant inquiry [remains] whether that conduct was intended to control the sale price or take unfair advantage of prospective bidders.").

22

49.     As set forth above, the Purchase Agreement is a product of arms-length negotiations and was not in any way tainted by fraud, collusion or bad faith.  Accordingly, the Debtor requests that the Court make a finding that the Purchaser is entitled to the protections of section 363(m) of the Bankruptcy Code.

**C.     The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, Encumbrances and Interests**

50.     The Debtor seeks authorization to sell the Assets to Purchaser free and clear of all liens, claims and encumbrances, except as expressly permitted by the Purchase Agreement.  Nonetheless, the Assets may be sold free and clear of liens in accordance with section 363(f) of the Bankruptcy Code, which provides, in pertinent part:

> (f)     The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if
>
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

51.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the Sale Transaction free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, and other interests.  As a condition to Closing, the Purchase Agreement provides that Prepetition Lender must consent to such satisfaction and discharge

23

of its senior secured lien by payment of the Purchase Price.  Pursuant to a judgment and lien search conducted in New York State and New York County, there are no other secured liens on the Debtor's assets.  Thus, the Assets may be sold free and clear of such liens pursuant to section 363(f)(2) of the Bankruptcy Code.

**D.     The Court Should Waive or Reduce the Fourteen-Day Stay Periods Required by Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure**

52.     Pursuant to Bankruptcy Rule 6004(g), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 14 days after entry of the order.  Fed. R. Bankr. P. 6004(g).  The purpose of Bankruptcy Rule 6004(g) is to provide sufficient time for an objecting party to appeal before the order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(g).

53.     Although Bankruptcy Rule 6004(g) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., 6004.09 (L. King, 15th rev. ed. 2005).  Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

54.     Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for 14 days, unless the court orders otherwise.

24

55.      To preserve the value of the Assets and limit the costs of administering and preserving the Assets, it is critical that the Debtor close the Sale Transaction as soon as possible after all closing conditions have been met or waived.   Accordingly, the Debtor hereby requests that the Court waive the 14-day stay periods under Bankruptcy Rules 6004(g) and 6006(d), or in the alternative, if an objection to the sale or to the assignment of a contract or lease is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal to allow the sale to close as provided under the Purchase Agreement.

E.       **The Assumption and Assignment of Assigned Contracts Should be Authorized**

56.      Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."   11 U.S.C. § 365(a).  Section 365(f) of the Bankruptcy Code provides that a debtor in possession may assign an executory contract or unexpired lease of the debtor only if (a) the debtor in possession assumes such contract or lease in accordance with the provisions of section 365, and (b) adequate assurance of future performance by the assignee of such contract or lease is provided. 11 U.S.C. § 365(f)(2).

57.      Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory lease or executory contract of a debtor.  This subsection provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee

(A) cures or provides adequate assurance that the trustee will promptly cure, such default;

25

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provide adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

58.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." EBG Midtown South Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), aff'd, 993 F.2d 300 (2d Cir.1993).

59.    When an executory contract or lease is to be assumed and assigned, adequate assurance may be provided by, among other things, demonstrating the financial health of the assignee and its experience and ability in managing the type of enterprise or property assigned. See e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when a prospective assignee of a lease from debtor has financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of success).

60.    To the extent that any defaults exist under any Assigned Contracts, the Debtor will cure, or provide adequate assurance of cure of, such defaults within the meaning of section 365(b)(1)(A) and in accordance with the Purchase Agreement.  Moreover, the Debtor will demonstrate facts at the Sale Hearing that show the Purchaser's (or the Successful Bidder's, as the case may be) financial credibility, experience in the industry, and willingness and ability to perform under the Assigned Contracts.  Therefore, the Sale Hearing will provide the Court and other interested parties with an opportunity to evaluate and, if

necessary, challenge the ability of the Purchaser (or the Successful Bidder, as the case may be) to provide adequate assurance of future performance under the Assigned Contracts. Accordingly, the Debtor submits that the assumption and assignment of the Assigned Contracts as set forth herein should be approved.

**F.    Conducting an Auction Pursuant to the Bidding Procedures is in the Best Interests of the Debtor's Estate and Creditors**

61.    In order to maximize the value of the Assets for the benefit of the Debtor, its creditors and its chapter 11 estate, the Debtor seeks to implement a competitive bidding process typical for transactions of this size and nature and designed to generate a maximum recovery.  The Debtor believes that the Auction and proposed Bidding Procedures will encourage participation by financially capable bidders that demonstrate the ability to close a transaction.  Furthermore, the Bidding Procedures are consistent with other procedures previously approved by this Court, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.  See e.g., In re Kmart, Case No. 02-B02474 (SPS) (Bankr. N.D. Ill. May 10, 2002); In re Global Crossing, Case No. 02-40188 (S.D.N.Y. March 25, 2002) (REG); In re Randall's Island Family Golf Ctrs., Inc., 261 B.R. 96 (S.D.N.Y. 2001); In re Integrated Resources, Inc., 147 B.R. 650 (S.D.N.Y. 1992).

**G.    Bidding Protections Are Warranted**

62.    The Debtor proposes that if overbidding occurs at the Auction, the Purchaser shall have the right, but not the obligation, to participate in the overbidding subject only to the limitations provided by the Bidding Procedures.  However, to compensate the Purchaser for serving as a "stalking horse," thereby subjecting its bid to better or higher offers, the Debtor and the Purchaser seek authority for the Debtor to pay the Purchaser the Expense

Reimbursement if an Alternative Transaction is approved or consummated or there is a material breach by the Debtor preventing a Closing as provided in the Purchase Agreement. The Debtor and the Purchaser believe that the Expense Reimbursement is (a) fair and reasonable, given the benefits to the estate of having a definitive Purchase Agreement and the risk to the Purchaser that a third-party offer may ultimately be accepted and (b) is necessary to preserve the value of the Debtor's estate.

63.     Bidding incentives such as the Expense Reimbursement encourage a potential purchaser to invest the requisite time, money and effort to conduct due diligence and sale negotiations with a debtor despite the inherent risks and uncertainties of the chapter 11 process.  See e.g., In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding bidding incentives may be "legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted); In re Marrose Corp., 89 B 12171-12179 (CB), 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "[a]greements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

64.     The Debtor submits that the Bidding Protections are a normal and necessary component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code. See e.g., In re Kmart, Case No. 02 B02474 (SPS) (Bankr. N.D. Ill. May 10, 2002) (authorizing a termination fee and bid protections for potential bidders); In re Comdisco, Inc., Case No. 01 24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) (approving a termination fee as, *inter alia*, an actual and necessary cost and expense of preserving the debtor's estate, of substantial benefit to the debtor's estate, and a necessary inducement for,

28

and a condition to, the proposed purchaser's entry into the Asset Purchase Agreement); <u>In re</u>

<u>Integrated Resources, Inc.</u>, 147 B.R. at 660 (noting that break-up fees may be legitimately

necessary to convince a "white knight" to offer an initial bid by providing some form of

compensation for the expenses such bidder incurs, and the risks such bidder faces by having

its offer held open, subject to higher and better offers); <u>In re Crowthers McCall Pattern, Inc.</u>,

114 B.R. 877 (Bankr. S.D.N.Y. 1990) (approving an overbid requirement in an amount equal

to the approved break-up fee).

65.     Here, the proposed Expense Reimbursement is a small fraction of the

Purchase Price, i.e., less than 1%.  Thus, the Expense Reimbursement is within the range of

fees typically paid in other significant sales transactions that have been consummated in a

bankruptcy setting. <u>See</u> <u>e.g.</u>, <u>Consumer News & Bus. Channel P'ship v. Financial News</u>

<u>Network, Inc. (In re Financial News Network, Inc.)</u>, 980 F.2d 165, 167 (2d Cir. 1992) (noting

that transaction at issue provided for a $8.2 million breakup fee on a $149.3 million

transaction (5.5%)); <u>Doehring v. Crown Corp. (In re Crown Corp.)</u>, 679 F.2d 774 (9th Cir.

1982) (bid protection of 4.9% approved).   Further, the amount of the Expense

Reimbursement is reasonably calculated to compensate the Purchaser (a) for committing the

time to perform due diligence, (b) for lost opportunity in being bound to a transaction that

could be topped in a competitive auction process and (c) for serving as a "stalking horse" to

encourage the submission of other bids. Accordingly, the Debtor believes that the Bidding

Protections should be approved.

## <u>NOTICE</u>

66.     Notice of this Motion will be given to (i) the Office of the United States

Trustee for the Southern District of New York; (ii) Prepetition Lender, by its counsel; and

(iii) the Debtor's twenty (20) largest unsecured creditors.  Additional notice will be provided

in accordance with the notice provisions contained herein. The Debtor submits that such notice is sufficient and requests that this Court find that no other or further notice is necessary.

## **NO PRIOR REQUEST**

67.    No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter orders, substantially in the form annexed hereto, granting the Motion and such other relief as may be just and proper.

Dated:   New York, New York
         February 26, 2016

                                    **KLESTADT WINTERS JURELLER**
                                    **SOUTHARD & STEVENS, LLP**


                            By:   */s/ Sean C. Southard*
                                  _____
                                  Sean C. Southard
                                  Maeghan J. McLoughlin
                                  200 W. 41st St., 17th Floor
                                  New York, New York 10036
                                  Tel: (212) 972-3000
                                  Fax: (212) 972-2245
                                  Email: ssouthard@klestadt.com
                                          mmcloughlin@klestadt.com

                                  *Proposed Counsel to the Debtor*

**<u>Exhibit A</u>**

**Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                        :        Chapter 11
                                             :
HOT SHOT HK, LLC,                            :        Case No. 16-10449 (JLG)
                                             :
                                             :
                    Debtor.                  :
-----------------------------------------------------------------x

## ORDER ESTABLISHING BIDDING PROCEDURES AND RELATED RELIEF REGARDING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, AND NOTICE THEREOF

Upon consideration of the Motion (the "Motion") of Hot Shot HK, LLC (the "Debtor") for entry of an order, pursuant to Sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), establishing (a) Bidding Procedures (as defined in the Motion), including the manner and form of notice to be applied during a sale of substantially all assets of the Debtor and assumption and assignment of related executory contracts, (b) date for the auction ("Auction"), (c) date for the hearing to consider approval of the Auction results (the "Sale Hearing"), and granting related relief; and sufficient cause appearing therefore; and it further appearing that sufficient notice of the Motion as required having been given, as evidenced by the Affidavit of Service filed on [_____], 2016; and it further appearing that this Court has jurisdiction to grant the requested relief pursuant to 28 U.S.C. §§ 157 and 1334; and after considering all objections to the Motion (the "Objections"); and a hearing having been held on [_____], 2016, to consider the relief requested in the Motion and all other proceedings had before the Court; and it further appearing that the relief requested in the Motion is reasonable and necessary under the circumstances to protect the interests of the Debtor, its estate, and creditors in connection with the proposed sale of substantially all assets in accordance with the Auction;

33

and it appearing that an order establishing Bid Procedures, fixing and approving the notice

and scheduling the Auction and Sale Hearing is in the best interests of the Debtor and parties

in interest; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY

ORDERED THAT:

1.      The Motion is GRANTED in all respects and as set forth below.   All

objections to the Motion that have not been settled or withdrawn are hereby overruled.

2.      The following deadlines, protections, and procedures (the "Bidding

Procedures") are approved and established in connection with the Debtor's contemplated sale

of the Purchased Assets[4]:

> a)      Any entity that wishes to make a bid for Assets (a
> "Potential Bidder") must provide the Debtor (and any statutory
> committee) with sufficient and adequate information to
> demonstrate that such Potential Bidder (i) has the financial
> wherewithal and ability to consummate the Sale Transaction
> including evidence of adequate financial resources, (ii) can provide
> all non-debtor contracting parties to the Client Contracts with
> adequate assurance of future performance as contemplated by
> section 365 of the Bankruptcy Code; (iii) will be on substantially
> the same or better terms and conditions as the Purchase Agreement
> except for price; (iv) will require the payment of a minimum cash
> purchase price to the Debtor of not less than $1,900,000.00 (the
> "Minimum Bid") and assumption of debt such that total bid value
> shall be at least $3,400,000.00; (v) will be accompanied by an
> earnest money deposit of 5% of the aggregate purchase price set
> forth in any Modified Purchase Agreement, plus the amount of the
> Expense Reimbursement (defined herein).  Any bid satisfying such
> criteria shall be designated as a "Qualified Bid" and the bidder a
> "Qualified Bidder."   Except as provided for in the Purchase
> Agreement, the bid must not contain any contingencies of any
> kind, including, but not limited to (a) obtaining financing or
> shareholder, board of directors or other approval, or (b) the
> outcome or completion of due diligence.  Each Potential Bidder
> must also affirmatively acknowledge that the Potential Bidder (x)
> had an opportunity to conduct due diligence regarding the Assets

---

[4] All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the
Motion or the APA.

prior to making its offer and does not require further due diligence, (y) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and (z) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures.

b)      Competing offers (each a "<u>Competing Offer</u>") must (a) be in writing and (b) be received by Sean C. Southard and Maeghan J. McLoughlin of Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, New York 10036 so that such bid is received no later than [April 4, 2016] at 5:00 p.m. (the "<u>Competing Offer Deadline</u>"). Parties who do not submit Competing Offers by the Competing Offer Deadline shall not be permitted to participate at the Auction.

c)      Competing Offers must be accompanied by a good faith deposit in the amount of 5% of the aggregate purchase price set forth in any Modified Purchase Agreement, plus the amount of the Expense Reimbursement, in the form of in the form of wire transfer or a certified check payable to KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP ESCROW MANAGEMENT ACCOUNT.  All such deposits shall be retained by the Debtor pending the hearing to consider the Sale Motion and shall be returned to a Potential Bidder (x) as soon as practicable if the Potential Bidder is not determined to be a Qualified Bidder or (y) no later than five (5) business days after entry of the Sale Order if the Potential Bidder is deemed to be a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not the Successful Bidder or the Backup Bidder; <u>provided</u>, <u>however</u>, that in the event the Purchaser is not the Successful Bidder, its Deposit shall be returned to it promptly upon termination of the Purchase Agreement, but in no event later than five (5) business days from the date of that termination.  The Debtor will maintain any Deposit in a non-interest bearing account.

d)      Any Competing Offer by a Qualified Bidder conforming to the within requirements shall be considered at the auction to be held at 200 West 41st St., 17th Floor, New York, New York 10036 on **April 8, 2016, starting at 10:00 a.m. (EST)**, or in such manner and at such alternative location as the Debtor may determine or the Court may direct (the "<u>Auction</u>").

e)      The Debtor shall, after the Competing Offer Deadline and prior to the Auction, evaluate all bids received, and determine which bid reflects the highest or best offer for the Assets.  The Debtor shall announce such determination at the commencement of the Auction and then the Debtor shall conduct the Auction among the parties submitting Competing Offers to determine if any higher or better offer might be obtained.  Any further bids made at the Auction shall be in increments of at least $100,000 greater than the preceding bid.

f)      If there is a successful Competing Offer for the Assets, such successful bidder (the "Successful Bidder") shall have such rights and responsibilities of the Purchaser, as set forth in the Modified Purchase Agreement, or the Purchase Agreement, as applicable with appropriate modifications for (i) the identity of the successful bidder and (ii) the purchase price as the same shall have been increased at the Auction (such transaction is an "Alternative Transaction").

g)      In the event that the Court enters a Final Order approving an Alternative Transaction, then the Purchaser shall be entitled to $20,000 of the actual and documented out-of-pocket fees and expenses incurred by Purchaser in the course of negotiating, drafting and approving the Purchase, Agreement and the Sale Transaction documents (the "Expense Reimbursement").

h)      The claims of Purchaser to the Expense Reimbursement shall constitute an administrative expense against the Debtor's bankruptcy estate under the applicable provisions of the Bankruptcy Code.

i)      In the event that a Competing Offer is the Successful Bidder and such Successful Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtor (but not as liquidated damages, the Debtor reserving the right to pursue all remedies that may be available to it) and the Debtor shall be free to consummate the proposed transaction with the next highest bidder or otherwise best (the "Backup Bidder") at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Bankruptcy Court.

j)      All bids for the purchase of the Debtor's assets shall be subject to approval of the Bankruptcy Court.

k)       No bids shall be considered by the Debtor or the Bankruptcy Court unless a party submitted a Competing Offer in accordance with the Bidding Procedures and participated in the Auction.  The Debtor, in its absolute discretion, may reject any Competing Offers not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules of the Court, or contrary to the best interests of the Debtor and parties of interest.

l)       All bids (other than those of the Successful Bidder and Backup Bidder) are irrevocable until the earlier of (A) ninety (90) days following entry of the Sale Order (defined below) and (B) closing with the Successful Bidder.

m)      All bids are subject to such other terms and conditions as are announced by the Debtor at the outset of the Auction.

n)      Parties interested in making Competing Offers are permitted to conduct diligence, subject to entry into a confidentiality agreement in form and substance acceptable to the Debtor.

3.       No later than five (5) business days after entry of this Order, the Debtor shall (a) serve a copy of the Motion and the Sale Notice, substantially in the form annexed to the Motion as Exhibit E (which form is hereby approved) together with a copy of this Order, by first class U.S. mail upon (i) the Office of the United States Trustee; (ii) counsel to the Committee, if one is appointed; (iii) all non-debtor contracting parties with respect to the Assigned Contracts; (iv) all parties who have made an expression of interest in acquiring the Assets; (v) all appropriate federal, state and local taxing authorities; (vi) all known persons holding a lien on any of the Assets; and (vii) to each person or entity that has filed a notice of appearance in this case. The Sale Notice shall be filed on the Court's docket at www.nysb.uscourts.gov

4.       Such service as provided in the previous paragraph is hereby deemed due, timely, good and sufficient notice of the entry of this Bidding Procedures Order, the Auction,

the Sale Motion, the Sale Hearing and all proceedings to be held thereon and matters related thereto.

5.      Responses or objections, if any, to the relief requested in the Sale Motion (other than objections based upon cure claims discussed below) must be in writing, must state the name of the objecting party, must state with particularity the reasons and basis for the objection, and be (a) filed with the Court and (b) served upon (i) the attorneys for the Debtor, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, New York 10036 (Attn: Sean C. Southard and Maeghan J. McLoughlin.), (ii) Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Paul Schwartzberg), (iii) the attorneys for the Official Committee of Unsecured Creditors, if one is appointed and (iv) the attorneys for the Purchaser, The Law Offices of Rachel Blumenfeld, 26 Court Street, Brooklyn, NY 11242, so as to be actually received by such persons no later than **April 5, 2016 at 5:00 p.m.** (the "Objection Deadline").

6.      Any and all objections to the Cure Amounts ("Cure Objection(s)") must be in writing, filed with the Court, and actually received by (i) the attorneys for the Debtor, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, New York 10036 (Attn: Sean C. Southard and Maeghan J. McLoughlin.), (ii) the Office of the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Paul Schwartzberg), (iii) the attorneys for the Committee, if one is appointed, and (iv) the attorneys for the Purchaser, The Law Offices of Rachel Blumenfeld, 26 Court Street, Brooklyn, NY 11242, so as to be actually received no later than **5:00 p.m. (EST) on the deadline date set for objections to the Sale Motion** (the "Cure Objection Deadline").

7.      The Cure Objection(s) shall set forth the cure amounts or obligations that the objecting party asserts have accrued and/or are due, the specific types and dates of the alleged cure amounts, obligations, defaults, pecuniary losses, and conditions to assignment, and the support therefor.

8.      Unless a Cure Objection is filed and served by a party to an Assigned Contract or a party interested in an Assigned Contract by the Cure Objection Deadline, all interested parties who have received actual or constructive notice hereof shall be deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assignment of the Assigned Contracts and shall be forever barred and estopped from asserting or claiming against the Debtor or Successful Bidder or any other assignee of the relevant Assigned Contract that any additional amounts are due or default exists, or conditions to assignment must be satisfied, under such Assigned Contracts for the period prior to the date of the Closing.

9.      Hearings with respect to Cure Objections may be held: (a) at the Sale Hearing; or (b) at such other date as the Court may designate, provided that if the subject Contract is assumed and assigned, the Debtor shall deposit the cure amount asserted by the objecting party (or such lower amounts as may be fixed by the Court) in a segregated account held by the Debtor and or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

10.     A properly filed and served Cure Objection shall reserve such party's rights against the Debtor (but not against the Purchaser or any other purchaser of the Assets and the Assigned Contracts) respecting the Cure obligation, but shall not constitute an objection to the remaining relief generally requested in the Sale Motion.

39

11.     The Sale Hearing **shall be held on [April 12, 2016]**, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004.

12.     This Order shall become effective immediately upon its entry.

13.    The Court shall retain jurisdiction over any matter or dispute arising form or

relating to the implementation of this Order.

Dated: New York, New York
_____

_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

In re                                                    :         Chapter 11
                                                         :
HOT SHOT HK, LLC,                                        :         Case No. 16-10449 (JLG)
                                                         :
                                                         :
                        Debtor.                          :
-----------------------------------------------------------------x

### ORDER AUTHORIZING AND APPROVING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (II) THE PROCEDURES GOVERNING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS; AND (III) RELATED RELIEF[5]

Upon the motion of the above-captioned debtor (the "<u>Debtor</u>"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, 9007 and 9014 (the "<u>Bankruptcy Rules</u>"), for entry of an order authorizing and approving, among other things, the sale of substantially all of the Debtor's assets to HS HK Acquisition LLC (the "<u>Purchaser</u>") free and clear of all liens, Claims and Encumbrances (as defined below), the assumption and assignment of the Assigned Contracts (as defined below), and related relief (Docket No. 4) (as amended, the "<u>Motion</u>");[6] and the Order Establishing Bidding Procedures And Related Relief Regarding The Sale Of Substantially All Of The Debtor's Assets, And Notice Thereof (Docket No. ___) (the "<u>Bidding Procedures Order</u>"); and it appearing that due and appropriate notice of the Motion, the Bidding Procedures Order, the Bidding Procedures, the Auction and the Sale Hearing having been given; and it appearing that no other notice of the

---

[5] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. *See* FED. R. BANKR. P. 7052.

[6] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the Purchase Agreement (as defined below). A copy of the Purchase Agreement is attached as Exhibit C to the Motion.

relief granted by this Order need be given; and the Court having conducted a hearing on the

Motion on [April 12, 2016] (the "Sale Hearing") at which time all interested parties were

offered an opportunity to be heard with respect to the Motion; and the Debtor having

conducted a marketing process in compliance with the Bid Procedures Order and determined

that the Purchaser has submitted the highest and best bid for the assets of the Debtor that the

Purchaser has offered to purchase as more specifically described in the Purchase Agreement

between the Debtor and the Purchaser (the "Purchase Agreement") and (the "Assets"); and all

parties in interest having been heard, or having had the opportunity to be heard, regarding

entry of this Order and approval of the sale of substantially all of the Debtor's assets to the

Purchaser and assumption and assignment of certain contracts (the "Sale Transaction") and

Purchase Agreement; and this Court being fully advised; this Court, based upon the

arguments, testimony and evidence presented to it, hereby makes the following findings of

fact and conclusions of law:

A.     This Court has jurisdiction to hear and determine the Motion and to grant the

relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this case and

the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the

Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, this Court

expressly finds that there is no just reason for delay in the implementation of this Order, and

expressly directs entry of judgment as set forth herein.

C.     This proceeding is a "core proceeding" within the meaning of

28 U.S.C. § 157(b)(2)(A), (N) and (O).

D.       The statutory predicates for the Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

E.       As evidenced by the affidavits of service filed with the Court, and based upon the representations of counsel at the Sale Hearing, (i) proper, timely and adequate notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale Transaction, the Auction and the Bid Deadline as approved herein has been provided in accordance with Bankruptcy Rules 2002, 6004, 9007 and 9014, (ii) such notice was good, sufficient and appropriate under the circumstances and (iii) no other or further notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale Transaction, the Auction or the Bid Deadline as provided herein is necessary or shall be required.

F.       A reasonable opportunity to object or be heard with respect to the Motion and the Sale Transaction has been afforded to all interested persons and entities, including, without limitation: (i) the U.S. Trustee, (ii) counsel for the Purchaser, (iii) counsel for the committee, if one is appointed, (iv) all parties that have filed a request for notice of pleadings in this case, (v) the United States' Attorney's Office and (vi) all other parties who filed requests for notice under Bankruptcy Rule 2002 in this case.

G.       Notice, as specified in the preceding paragraph and as evidenced by the affidavits of service filed with the Court, has been provided in the form and manner specified in the Motion and required by the Bid Procedures Order, and such notice is reasonable and adequate.

H.       The sale process for the Assets and the Auction were conducted in accordance with the Bidding Procedures Order.  At the conclusion of the Auction, the Purchaser was deemed the Successful Bidder with the highest and best offer for the Assets.  The Auction

45

was conducted in a non-collusive, fair and good faith manner and a reasonably opportunity has been given to any interested party to make a higher and better offer for the Assets.

I.      The Purchaser is purchasing the Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.

J.      The Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good faith and from arms' length bargaining positions.  Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Sale Transaction or any part of the transactions contemplated by the Purchase Agreement to be avoidable under section 363(n) of the Bankruptcy Code.

K.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtor afforded interested potential purchasers a full and fair opportunity to qualify as Qualified Bidders under the Bidding Procedures and to submit an offer for the Assets.

L.      The consideration provided by the Purchaser for the Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery for all of the Debtor's stakeholders than would be provided by any other practical available alternative and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act and all other applicable laws.

M.      The Debtor has demonstrated a sufficient basis and compelling circumstances requiring the Debtor to enter into the Purchase Agreement and sell the Assets under section

46

363 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtor's business judgment and are in the best interests of the Debtor, the estate, and its creditors.

N.     The marketing and bidding processes implemented by the Debtor and its advisors, as set forth in the Motion, were fair, proper, and reasonably calculated to result in the best value received for the Assets.

O.     The Debtor has full authority and power to execute and deliver the Purchase Agreement and related agreements and all other documents contemplated by the Purchase Agreement, to perform its obligations therein and to consummate the Sale Transaction. Except as set forth in the Purchase Agreement, no additional consents or approvals are necessary or required for the Debtor to enter into the Purchase Agreement, perform its obligations therein and consummate the Sale Transaction.

P.     The Purchaser would not have entered into the Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtor, the estate, and its creditors, if the Assets were not sold to it free and clear of all Claims and Encumbrances or if the Purchaser would, or in the future could, be liable for any Claims and Encumbrances against the Assets.

Q.     Selling the Assets free and clear of any and all liens, claims (as defined in section 101(5) of the Bankruptcy Code), security interests, mortgages, encumbrances, obligations, including employee benefit obligations charges against or interests in property, adverse claims, claims of possession, rights of way, licenses, easements or restrictions of any kind, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature whether known or unknown, legal or

equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement, understanding, law, equity or otherwise, subject to applicable law, including section 363 of the Bankruptcy Code (collectively, the "Claims and Encumbrances") would adversely impact the Debtor's estate, and the sale of the Assets other than as free and clear of all Claims and Encumbrances would be of substantially less value to the Debtor's estate.

R.      The provisions of section 363(f) of the Bankruptcy Code have been satisfied. All holders of Claims and Encumbrances, if any, who did not object, or withdrew their objections to the Sale Transaction, are deemed to have consented to the Sale Transaction.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

1.      The relief requested in the Motion is granted and approved in all respects, as set forth herein.  The Debtor's entry into the Purchase Agreement and the Sale Transaction is hereby approved in all respects.  Except as may be expressly provided herein, objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.

2.      The Debtor is authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction in accordance with the Motion, the Purchase Agreement and this Order, and (b) perform, consummate, implement and close fully the Sale Transaction, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement including, without

limitation, consenting to the assignment by the Purchaser of any of its rights under or relating to the Purchase Agreement.

3.      Those holders of Claims and Encumbrances and other non-Debtor parties who did not object, or who withdrew their objections to entry of this Order, the Motion, the Bidding Procedures Order, the Sale Hearing, the Sale Transaction and the Purchase Agreement are deemed to have consented to this Order, the Bidding Procedures Order, the Sale Transaction and the Purchase Agreement pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against the Purchaser, its successors, its assigns, its representatives, its affiliates, its properties, or any agent of the foregoing to recover any claim which such person or entity has against the Debtor or any of its affiliates or any of the Debtor's property.  Those holders of Claims and Encumbrances and other non-Debtor parties who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims and Encumbrances, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against or in which they assert a Claim or Encumbrance.

**Sale and Transfer of the Acquired Assets**

4.      Upon Closing, the Assets transferred, sold and delivered to the Purchaser shall be free and clear of all Claims and Encumbrances of any person or entity.  The transfer of the Assets to the Purchaser constitutes a legal, valid and effective transfer of the Assets and shall vest the Purchaser with all right, title and interest in and to the Assets.

5.      Upon closing of the Sale Transaction, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Assets pursuant to the terms of the Purchase Agreement.

6.      Effective on the Closing, all entities, including, but not limited to, the Debtor, creditors, employees, former employees and shareholders, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, and their respective successors or assigns, including, but not limited to, persons asserting any Claims or Encumbrance against the Debtor's assets, shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Assets or the Purchaser (or its successors, assigns, agents or representatives) as alleged successor or otherwise with respect to any Claims and Encumbrances on or in respect of the Assets.

7.      Each and every term and provision of the Purchase Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon all entities, including, but not limited to the Debtor, the Purchaser, creditors, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and their respective successors or assigns, including but not limited to persons asserting any Claim or Encumbrance against or interest in the Debtor's estate or the Debtor's assets, including any subsequent appointment of a trustee or other fiduciary under any section of the Bankruptcy Code.

8.      Upon the Closing, all entities holding Claims and Encumbrances of any kind and nature against the Debtor's assets hereby are barred from asserting such Claims and Encumbrances against the Purchaser (or its successors, assigns, agents or representatives)

50

and/or the Assets and, effective upon the transfer of the Assets to the Purchaser upon Closing, the Claims and Encumbrances shall attach to the proceeds of the Sale Transaction with the same force, validity, priority and effect, if any, as against the Debtor's assets.

9.      This Order (a) is and shall be effective as a determination that, upon Closing, all Claims and Encumbrances existing as to the Debtor's assets conveyed to the Purchaser have been and hereby are adjudged to be unconditionally released, discharged and terminated, with all such Claims and Encumbrances attaching automatically to the proceeds in the same manner and priority, and (b) shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Debtor's assets conveyed to the Purchaser.  All Claims and Encumbrances of record as of the date of this Order shall be removed and stricken as against the Assets in accordance with the foregoing.  All entities are authorized and specifically directed to strike all such recorded Claims and Encumbrances against the Assets from their records, official or otherwise.

10.      If any person or entity which has filed financing statements, mortgage, *lis pendens* or other documents or agreements evidencing Claims and Encumbrances on the Assets shall not have delivered to the Debtor prior to closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

releases of liens and easements and any other documents necessary for the purpose of documenting the release of all Claims and Encumbrances which the person or entity has or may assert with respect to the Assets, the Debtor is hereby authorized and directed upon closing, and the Purchaser is hereby authorized upon closing, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets. Upon closing of the Sale Transaction, each of the Debtor's creditors is authorized and directed to execute such documents and take all such actions as may be necessary to release their respective Claims and Encumbrances against the Assets.

11.    Upon closing, the Purchaser (or its successors, assigns, agents or representatives) shall not be deemed to be (a) a successor to the Debtor, (b) *de facto* merged with the Debtor or (c) a mere continuation of the other Debtor. Without limiting the generality of the foregoing, and except as specifically provided in the Purchase Agreement, the Purchaser (or its successors, assigns, agents or representatives) shall not be liable for any claims against the Debtor or any of its predecessors or affiliates or assets, other than as expressly provided for in the Purchase Agreement or in this Order.

**<u>Assumption and Assignment of Contracts</u>**

12.    At or before the Closing, the Purchaser shall provide (i) documentation identifying all Contracts the Purchaser wishes to be assumed by the Debtor and assigned by the Debtor to the Purchaser (the "<u>Assigned Contracts</u>"); and (ii) all Contracts that the Purchaser will not be seeking to be assigned by the Seller (the "<u>Excluded Contracts</u>"). At any time prior to the Closing, the Purchaser shall have the right to re-designate any Assigned Contract as either an Assigned Contract or an Excluded Contract. The Debtor agrees not to reject any Contract on or before the 30th day following the Closing. The Debtor shall assume

in the Bankruptcy Case and assign to the Purchaser, any Assigned Contract (and any Contract that the Purchaser designated after the Closing), provided that the Purchaser shall pay all scheduled and disclosed cure amounts in connection with such assumption, and assign said Assigned Contracts to the Purchaser.  The Debtor shall use best efforts to seek assumption and assignment of any Contracts designated prior to and after the Closing and obtain an order of the Court authorizing such assumptions and assignments.

**Additional Provisions**

13.    The provisions of this Order and the Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered (a) confirming or consummating any plan of reorganization of the Debtor, (b) converting the Debtor's case from chapter 11 to chapter 7, (c) dismissing the Debtor's bankruptcy case or (d) appointing a chapter 11 trustee or examiner, and the terms and provisions of the Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Purchase Agreement shall continue in this or any superseding case and shall be binding upon the Debtor, the Purchaser, and their respective successors and permitted assigns.

14.    The Debtor shall assign to the Purchaser any claim and cause of action related to the Assets, including, without limitation, (i) those arising under chapter 5 of the Bankruptcy Code, and (ii) those related to any employee, independent contractor, or vendor with which the Purchaser will continue to perform business, or related to any Assigned Contract, excluding those claims relating to any of the Debtor's insiders (as insider is defined under Section 101(31) of the Bankruptcy Code).

15.    Each and every federal, state, and governmental agency or department and any other person or entity is hereby directed to accept any and all documents and instruments

53

necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

16.     Nothing contained in any order of any type or kind entered in this chapter 11 case or any related proceeding subsequent to entry of this Order, nor in any chapter 11 plan confirmed in this chapter 11 case, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.  Further, the provisions of this Order and any actions taken pursuant hereto shall survive the entry of an order confirming any plan of reorganization or liquidation for the Debtor, the conversion of the Debtor's case from chapter 11 to a case under chapter 7 of the Bankruptcy Code or the dismissal of the Debtor's bankruptcy case.  In any plan of reorganization or liquidation or otherwise, the Debtor shall not make any statement, take any position or take any act that supports an argument that the Purchaser assumed debt that is not expressly assumed under the Purchase Agreement.

17.     To the extent, if any, anything contained in this Order conflicts with a provision in the Purchase Agreement, this Order shall govern and control.

18.     The Purchaser is purchasing the Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.  The consideration provided by the Purchaser for the Assets is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

19.     This Court retains jurisdiction, even after conversion of this chapter 11 case to a case under chapter 7, to (a) interpret, implement and enforce the terms and provisions of this Order (including any injunctive relief provided in this Order) and the terms of the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and of

54

each of the agreements executed in connection therewith; (b) protect the Purchaser (and its successors, assigns, agents and representatives) and the Assets from and against any of the Claims and Encumbrances; (c) resolve any disputes arising under or related to the Purchase Agreement or the Sale Transaction; (d) adjudicate all issues concerning (alleged) pre-Closing Claims and Encumbrances and any other (alleged) interest(s) in and to the Debtor's assets, including the extent, validity, enforceability, priority and nature of all such (alleged) Claims and Encumbrances and any other (alleged) interest(s); and (e) adjudicate any and all issues and/or disputes relating to the Debtor's right, title or interest in the Debtor's assets, the Motion and/or the Purchase Agreement.

20.    From and after the date hereof, the Debtor shall act in accordance with the terms of the Purchase Agreement and the Debtor, to the extent they have not already done so, shall execute the Purchase Agreement at or prior to Closing.

21.    This Order constitutes an authorization of conduct by the Debtor and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state.  The failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

22.    This Order and the Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors and assigns of the Purchaser, the Debtor and its affiliates and subsidiaries, the Debtor's assets, and any subsequent trustees appointed in the Debtor's chapter 11 case or in any chapter 7 case or upon (a) a conversion of this chapter 11 case to a case under chapter 7 or (b) dismissal of the Debtor's bankruptcy case.

23.    The failure specifically to include any particular provisions of the Purchase

Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being

the intent of the Court that the Purchase Agreement and each and every provision, term and

condition thereof be, and therefore is, authorized and approved in its entirety.

24.    The provisions of this Order are nonseverable and mutually dependent.

25.    The automatic stay of section 362(a) of the Bankruptcy Code shall not apply

to and otherwise shall not prevent the exercise or performance by any party of its rights or

obligations under the Purchase Agreement, including, without limitation, with respect to any

cash held in escrow pursuant to the provisions thereof.

26.    This Sale Order shall take effect immediately and shall not be stayed pursuant

to Bankruptcy Rules 6004(g), 6004(h), 6006(d), 7062, or otherwise.


Dated: New York, New York
         _____ __, 2016


                                              _____
                                              United States Bankrutpcy Judge

## **Exhibit C**

**Purchase Agreement**

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of February 26, 2016 (the "Effective Date"), by and between HS HK Acquisition LLC a New York limited liability company (the "Purchaser"), and Hot Shot HK, LLC a New York limited liability company (the "Seller").

## W I T N E S S E T H:

**WHEREAS**, Seller filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") on February 26, 2016 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under Case Number 16-10449 (JLG) (the "Bankruptcy Case");

**WHEREAS**, at the time of the filing of the Bankruptcy Case, Seller was a wholesaler and manufacturer of women's apparel and outerwear (the "Business");

**WHEREAS,** the Seller wishes to sell and transfer to the Purchaser and the Purchaser wishes to purchase from the Seller all of the Assets (as hereinafter defined) relating to the Seller's Business in accordance with Sections 105(a), 363, 365 and other applicable provisions of the Bankruptcy Code, upon the terms and conditions and for the consideration described below in this Agreement (the "Sale Transaction"); and

**WHEREAS**, the transactions hereunder are subject to Bankruptcy Court approval and the Assets will be sold pursuant to a Sale Order (as hereinafter defined) in form and substance satisfactory to Seller and Purchaser.

**NOW, THEREFORE,** in consideration of the mutual promises, covenants, representations and warranties made herein and of the mutual benefits to be derived therefrom, the parties hereto agree as follows:

## ARTICLE I

## PURCHASE AND SALE OF ASSETS

1.1    Sale of Assets.  Subject to the terms and conditions hereof, at the closing of this Sale Transaction (the "Closing") the Seller shall sell, transfer, convey and deliver all of the Assets (as hereinafter defined) of the Seller to the Purchaser and the Purchaser shall purchase all of the Assets from the Seller free and clear of all Liens existing as of the Closing, regardless of whether any of such Assets existed before, on, or after the commencement of the Bankruptcy Case.

1.2    Purchase Price.  The purchase price of the Assets (the "Purchase Price") is comprised of (a) $1,400,000.00 cash, (b) satisfaction of up to $400,000.00 in DIP Financing (as defined below), and (c) the assumption of the unsatisfied deficiency claim of Prepetition Lender

pursuant to a promissory note (the "Closing Note") issued by Purchaser at the Closing and expected to be not less than $1,500,000.00 as of the Closing.

1.3    Closing.  The Closing of the Sale Transaction shall take place at 10:00 a.m., local time, at the offices of Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, New York 10036, or remotely via the exchange of documents and signatures in PDF format or by facsimile, within ten (10) Business Days following the date on which all of the conditions to the parties obligations (other than conditions to be satisfied by the delivery of documents at the Closing, but subject to the satisfaction of such conditions at the Closing) have been satisfied or waived in writing by the or parties entitled to the benefit thereof, or such other date or place as may be agreed upon by the parties hereto.  The date and time of Closing is hereinafter sometimes called the "Closing Date."

1.3.1    The Seller shall deliver to the Purchaser, free and clear of any Lien other than Permitted Liens, all of the Assets by delivery of instruments of conveyance and such other documents and certificates as are specified herein.

1.3.2    A portion of the Purchase Price shall be immediately paid to JPMorgan Chase, N.A. (the "Prepetition Lender").  Purchaser shall issue the Closing Note in satisfaction of the remainder of the secured debt owed to the Prepetition Lender.

1.4    Allocation of Purchase Price.  The parties agree to allocate the Purchase Price as follows: (i) $1,400,000 in cash shall be used to partially satisfy the secured claims of the Prepetition Lender, and (ii) $400,000 shall be made available to Seller as financing to operate the Business (the "DIP Financing") pursuant to a financing facility (the "DIP Agreement") and utilized by Seller to pay its own closing costs and expenses.

1.5    Assumption of Liabilities; Purchaser Not Successor to Seller.  Purchaser shall assume as of the Closing Date and shall subsequently observe and honor, only (a) the going-forward obligations (i.e., obligations arising and accruing on or after the Closing Date) of Seller under the Client Contracts (as hereinafter defined) and those contracts and Accounts Payable set forth in Schedule 1.5 of the Disclosure Schedule which are duly assigned to Purchaser in accordance with this Agreement, and (b) the unsatisfied deficiency claim of the Prepetition Lender by and through the Closing Note (collectively, the "Assumed Liabilities").  For the sake of clarity, the parties acknowledge that the Purchaser will assume the Client Contracts and IP Agreements in accordance with the requirements of the applicable provisions of the Bankruptcy Code and subject to the procedures set forth in the Sale Order.  Purchaser shall not be the successor to either of the Seller and Seller hereby acknowledges and agrees that, except for the Assumed Liabilities, Purchaser is not assuming any liabilities or obligations of Seller, whether known, unknown, contingent or otherwise.  Notwithstanding the foregoing, the Purchaser shall assume such debts of the Debtor that it determines in its business judgment are necessary to complete the Sale Transaction.

1.6    Open Client Contracts.  Subject to Bankruptcy Court approval, the Seller shall assign to the Purchaser, and the Purchaser shall assume, all Sellers' right, title and interest that is transferable in and to the Client Contracts other than the Excluded Contracts (as hereinafter

2

defined) relating to the Business entered into by the Seller prior to the Closing in the Ordinary Course of Business and consistent with the representations and warranties contained in this Agreement and past practice (the "Client Contracts"). As of the Effective Date, all Client Contracts are listed on Schedule 1.6 of the Disclosure Schedule.

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES

2.1    Representations and Warranties of the Seller.  The Seller represents and warrants to Purchaser as follows:

2.1.1    Ownership and Condition of Assets.  The Seller has good and marketable title to all the Assets, free and clear of any Liens, whether arising by operation of any law, judgment, decree or agreement, except for the Lien securing the claim of the Prepetition Lender and any Permitted Liens, if any.  Subject to the entry of and in accordance with the Sale Order, all Liens other than any Permitted Liens will be discharged in full on or prior to the Closing Date. The Assets being transferred to the Purchaser are sufficient for the operation of the Seller's Businesses as currently conducted.

2.1.2    Authority for Agreements.  Subject to Bankruptcy Court approval and entry of the Sale Order, the Seller has the legal capacity to execute and deliver this Agreement as well as other agreements and instruments referenced in this Agreement (collectively, the "Transaction Agreements"), and to perform its obligations under the Transaction Agreements and to consummate the Sale Transaction contemplated by each such Agreement.  Subject to Bankruptcy Court approval, the Transaction Agreements constitute the valid and legally binding obligations of the Seller.  The execution and delivery of the Transaction Agreements and the consummation of the Sale Transaction contemplated by the Transaction Agreements will not conflict with or result in any violation of or default under any provision of (a) the certificate of incorporation or bylaws of Seller, (b) the operating agreement or certificate of formation of Seller, or (c) any mortgage, indenture, lease, agreement or other instrument, permit, concession, grant, franchise, license, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to the Seller, or any of the properties of the Seller.  Upon entry of the Sale Order, except as set specified in Schedule 2.1.2 of the Disclosure Schedule, no consent, license, approval, order or authorization of, or registration, declaration or filing with, any Governmental Authority is required on the part of the Seller in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby.  Upon entry of the Sale Order, except as set specified in Schedule 2.1.2 of the Disclosure Schedule, no consent of any third party is required to be obtained by the Seller in connection with the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby (including, without limitation, in connection with the assignment to Purchaser of the Client Contracts).

2.1.3    Company Status.  Seller is a limited liability company duly formed, validly existing and in good standing under the laws of the State of New York, and subject to Bankruptcy Court approval, has full power and authority to carry on its business as now conducted and to own

or lease and to operate its properties as and in the places where such business is now conducted and such properties are now owned, leased or operated.

2.1.4  <u>Capitalization</u>.  All of the membership interests in Seller are owned as follows: (a) Joseph Saadia – 45%; (b) Marko Elenhorn – 37%; and (c) Youssef Saadia – 18%. The outstanding obligations owing to Prepetition Lender on account of financing provided to the Seller is equal to approximately $2,900,000 and no other secured debt is owed by Seller.

2.1.5  <u>Undisclosed Liabilities</u>.  Except as disclosed in the Bankruptcy Case, Seller does not have any liabilities or obligations of any nature, whether absolute, accrued, contingent or otherwise.

2.1.6  <u>Taxes</u>.  The Seller has duly filed all federal, state and local Returns which are required to be filed prior to the Effective Date and have paid all Taxes which are shown thereon to be due and all other Taxes imposed by law upon them or any of their properties, assets, income, receipts, payrolls, transactions, capital, net worth or franchises which have become due and payable.  No transfer, property or other Taxes are or will be payable (including, without limitation, as a result of an audit or other official inquiry before or after the Closing) by the Purchaser or the Seller in respect of the sale by the Seller.  No tax liens have been filed and neither the Internal Revenue Service, the New York State Department of Taxation and Finance, nor any other taxing authority is now asserting or, to the Knowledge of the Seller, threatening to assert against the Seller any deficiency or claim for additional Taxes.  No Return of the Seller is currently under audit by the Internal Revenue Service, the New York State Department of Taxation and Finance, or by the taxing authorities of any other jurisdiction.

2.1.7  <u>Contracts</u>.  No Assumed Contract, if any, has been orally modified or amended. Purchaser shall have the right to designate additional executory contracts for assumption by Seller and assignment to Buyer at any time up to the Closing Date by written notice to the Seller. Upon receipt of such notice, the Seller shall take all necessary steps to cause the Bankruptcy Court to approve the assumption by Seller and assignment to Purchaser of such additional executory contracts provided, (i) approval of the assumption and assignment of such additional executory contracts shall not be a condition to Closing, (ii) failure of the Bankruptcy Court to approve such assumption and assignment shall not be a breach by Seller of its obligations hereunder, and (iii) in the event the assumption and assignment of such additional executory contracts is approved by the Bankruptcy Court, Purchaser shall pay all related Cure Costs (as defined below) for such executory contracts which are designated by Buyer for assumption. Upon approval by the Bankruptcy Court of the assumption and assignment of any additional executory contracts, such additional executory contracts, the representations set forth above shall also be deemed to be made by the Seller with respect to all such additional Assumed Contracts.

2.1.8  <u>Property</u>.  The Seller owns no real property.  The only real property leased by the Seller in the United States is the real property located at: (i) 1407 Broadway, Suite 2018, New York, NY 10018, and (ii) 1735 Jersey Ave., North Brunswick, NJ (together the "<u>Leases</u>"), both of which are leased pursuant to oral agreement.

2.1.9    Intentionally Omitted.

2.1.10    Litigation.  Except for the Bankruptcy Case and as set forth in Schedule 2.1.10 of the Disclosure Schedule there is no judicial or administrative action, suit, proceeding or investigation pending or, to the Knowledge of the Seller, threatened which has or could have a Material Adverse Effect or result in any liability on the part of the Seller, or which involves or could involve the validity of this Agreement or of any action taken or to be taken in connection herewith; nor has any such action, suit, proceeding or  investigation been pending within the three (3) years preceding the Effective Date.

2.1.11    Brokers, Finders, etc.  All negotiations relating to this Agreement and the transactions contemplated hereby have been carried on without the participation of any Person acting on behalf of the Seller in such manner as to give rise to any valid claim against the Seller or the Purchaser for any brokerage or finder's commission, fee or similar compensation.

2.1.12    Intellectual Property.

(a)    Schedule 2.1.12 of the Disclosure Schedule contains a complete and correct list and accurate summary description of all intellectual property relating to the Business now held by or owned by the Seller (the "Intellectual Property").  The Intellectual Property includes all intellectual property that is used in the Business.

(b)    Except as set forth in Schedule 2.1.10 of the Disclosure Schedule, the Seller has not infringed nor is infringing, nor has the Seller contributed to or is contributing to the infringement of, any copyrights, trademarks, trade-names, logos, inventions, discoveries, trade secrets, processes, know-how, or any applications or registrations relating thereto, owned by another Person and not licensed to the Seller.  Except as set forth in Schedule 2.1.10 of the Disclosure Schedule, there are no pending or, to the Knowledge of the Seller, threatened actions against the Seller for infringement of any such Intellectual Property.

(c)    All licenses for the use of any Intellectual Property and computer software owned by or licensed by third parties to the Seller are described in Schedule 2.1.12 of the Disclosure Schedule, are in full force and effect and, following the consummation of the transactions contemplated by this Agreement, shall remain in full force and effect.

(d)    Intentionally Omitted.

(e)    Set forth in Schedule 2.1.14 of the Disclosure Schedule is a list of all contracts and agreements (whether oral or written) between the Seller and a third party which imparts or which imparted an obligation of noncompetition, secrecy, confidentiality or non-disclosure upon the Seller or any employee, which obligation is currently in effect.

(f)    The Seller has not received notices from any party indicating to them that Sections 2.1.14(a), (b) and (c) are untrue.

(g)    At the Closing, the Seller shall deliver or cause to be delivered an assignment of all Intellectual Property, duly executed by Seller.

2.1.13  Insurance.  Schedule 2.1.13 of the Disclosure Schedule contains a complete and correct list and accurate summary description of all insurance policies maintained by the Seller.  The Seller has delivered to the Purchaser complete and correct copies of all such policies together with all riders and amendments thereto.  Such policies are in full force and effect, and all premiums due thereon have been paid.  The Seller has complied in all respects with the terms and provisions of such policies.

2.1.14  Client Contracts.  Subject to Bankruptcy Court approval, the Client Contracts are in full force and effect, and true, correct and complete copies thereof have been delivered to the Purchaser.  No default exists under the Client Contracts, and no event has occurred under the Client Contracts which, but for the giving of notice or the passage of time, or both, would constitute a material breach or default thereunder.

2.1.15  Non-Contravention; No Consents.

(a)  Neither the execution and delivery of this Agreement by Seller nor the consummation or performance of any of the transactions contemplated by this Agreement will give any person the right to prevent, delay or otherwise interfere with any of the transactions contemplated hereby pursuant to (i) any provision of Seller's certificate of incorporation; (ii) any resolution adopted by the board of directors or the shareholders of Seller; or (iii) any contract or agreement to which Seller is a party or by which Seller may be bound.

(b)  Except for the Sale Order, Seller is not and will not be required to obtain any consent from any person in connection with the execution and delivery of this Agreement or the consummation or performance of any of the transactions contemplated hereby.

2.1.16  Good Faith.  This Agreement and all Ancillary Agreements were negotiated and entered into at arm's length and, to the Seller's Knowledge, in good faith, and Seller and Buyer did not engage in any collusion with respect to setting or fixing the Purchase Price, and to the Knowledge of Seller, there are no facts to support a finding that Buyer negotiated and entered into this Agreement and all Ancillary Agreements other than in good faith as described in Section 363(m) of the Bankruptcy Code.

2.1.17  Bankruptcy.  Seller is in full compliance with the Bankruptcy Code, the rules promulgated thereunder and all orders of the Bankruptcy Court in connection with the Sale Order.  Neither Seller or any affiliate or representative of Seller has taken any action, or failed to take any action, which might, to any extent, prevent, impede or result in the revocation of the vesting in Purchaser upon entry of the Sale Order of good, valid and marketable title to the Assets (or any portion thereof) free and clear of all Liens and interests of creditors and equity security holders.

2.1.18  No Other Representations and Warranties.  Except for the representations and warranties contained in this Section 2.1 (including the related portions of the Disclosure

6

Schedule), Seller has not made or makes any other express or implied representation or warranty, either written or oral, on behalf of Seller, including any representation or warranty as to the future revenue, profitability or success of the Business.

2.2     Representations and Warranties of the Purchaser. The Purchaser represents and warrants to the Seller as follows:

2.2.1   Corporate Status.   The Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New York.

2.2.2   Authority for Agreements.   Purchaser has the full corporate power and authority to execute and deliver the Transaction Agreements to which it is a party, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated by such Transaction Agreements.   The execution and delivery of the Transaction Agreements, and the consummation of the transactions contemplated hereunder have been duly authorized by the Purchaser.   This Agreement constitutes the valid and legally binding obligation of the Purchaser. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereunder will not conflict with or result in any violation of or default under any provision of the Purchaser's certificate of formation or any mortgage, indenture, lease, agreement or other instrument, permit, concession, grant, franchise, license, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to the Purchaser or any of its properties.   No consent, approval, order or authorization of, or registration, declaration or filing with any Governmental Authority is required on the part of the Purchaser in connection with the execution and delivery of this Agreement, or the consummation of the transactions contemplated hereby or by any Transaction Agreement.

2.2.3   Brokers, Finders, etc.   All negotiations relating to this Agreement and the transactions contemplated hereby have been carried on without the participation of any Person acting on behalf of the Purchaser in such manner as to give rise to any valid claim against the Seller for any brokerage or finder's commission, fee or similar compensation.

2.2.4   Sufficiency of Funds.   On or before the Closing Date, 2016, Purchaser shall have sufficient cash on hand to make payment of the Purchase Price and consummate the transactions contemplated hereby.

## ARTICLE III

## CLOSING OBLIGATIONS

3.1     Closing Deliveries.   At the Closing the following agreements, instruments and documents shall be executed and delivered:

3.1.1.   Sale of Assets and Assumption of Client Contracts.   The Seller and the Purchaser shall execute and deliver a Bill of Sale and Assignment and Assumption Agreement in the form attached hereto as **Exhibit A**.

3.1.2   <u>Resolutions</u>.   The Purchaser and Seller shall each deliver written resolutions of their respective members, managers, shareholders and/or board of directors (as applicable) authorizing the transactions contemplated herein.

3.1.3   <u>Name Amendment</u>.   The Seller and Purchaser shall execute and deliver a Certificate of Name Change in the form attached hereto as **<u>Exhibit B</u>**.

3.2   <u>Satisfaction of Indebtedness and other Liabilities</u>.   The Seller shall permit the Purchaser to use a portion of the Purchase Price to make the payments described in Section 1.3 hereof.

3.3   <u>Accounts Receivable; Accounts Payable; Representation of</u> .   On the Closing Date, Seller shall provide Purchaser with a list of all its Accounts Receivable and the invoice dates thereof and the name of the payee.   On the Closing Date, Seller shall provide Purchaser with a list of all of its Accounts Payable and other obligations, whether or not disclosed or reserved against in the Financial Statements, excluding only those that are being paid at the Closing.

## <u>ARTICLE IV</u>

## COVENANTS

4.1   <u>Due Diligence</u>.   During the term of this Agreement, Seller will afford Purchaser's authorized representatives all reasonable opportunity and access during normal business hours to its personnel, contracts, books and records and all other documents and data related to the Seller, the Assets and the Business.   Where practicable, Seller will mail such information and materials related to the Seller, the Business and the Assets to Purchaser or Purchaser's accountants and counsel.   Seller shall also comply with such diligence obligations as may be approved and required by Order of the Bankruptcy Court in relation to solicitation of competing bids.

4.2   <u>Conduct of Business until the Closing Date</u>.   From the Effective Date to the Closing Date, except as contemplated by this Agreement or otherwise consented to by Purchaser in writing (which consent shall not be unreasonably withheld or delayed), subject to orders of the Bankruptcy Court and otherwise to the requirements of the Bankruptcy Code, the Seller shall use commercially reasonable efforts to:

4.2.1   carry on its business in, and only in, the Ordinary Course of Business, in substantially the same manner as has been conducted since the Petition Date, subject to orders of the Bankruptcy Court and otherwise to the requirements of the Bankruptcy Code, and use all reasonable efforts to preserve intact its present business organization, keep available the services of its present officers and key employees, and preserve its relationship with customers and others having business dealings with it to the end that its goodwill and going business shall be in all material respects unimpaired following the Closing Date;

4.2.2   maintain all its material structures, equipment and other tangible  personal property currently in use in good operating condition and repair, except for ordinary wear and tear;

4.2.3    keep in full force and effect insurance comparable in amount and scope of coverage to insurance now carried by it;

4.2.4    pay accounts payable and other obligations when they become due and payable in the Ordinary Course of Business;

4.2.5    perform in all material respects all of its obligations under agreements, contracts and instruments relating to or affecting its properties, assets and business;

4.2.6    maintain its books of account and records in the usual, regular and ordinary manner;

4.2.7    not amend its certificate of incorporation or bylaws;

4.2.8    not enter into or assume any agreement, contract or commitment of the character required to be disclosed in Section 2.1.9;

4.2.9    not merge or consolidate  with, or agree to merge or consolidate with, or purchase substantially all of the assets of, or otherwise acquire any business or any corporation, partnership, association or other business organization or division thereof;

4.2.10  not take any action the taking of which would result in a violation of any of the representations and warranties set forth in Section 2.1.7; and

4.2.11  promptly advise Purchaser in writing of any change which, individually or in the aggregate, has or could have a Material Adverse Effect on the Business or breach this Section 4.2.

4.3    Financials, etc.  Seller shall provide Purchaser, as soon as the same become available, copies of all financial statements in the form of management reports of Seller for periods subsequent to the most recent Financial Statement which become available prior to the Closing Date.

4.4    Public Announcements.  Except as required by law, none of the parties hereto shall make any public announcement in respect of the transactions contemplated hereby without the prior written consent of the other parties hereto (which consent will not be unreasonably withheld or delayed).

4.5    Filings and Authorizations.  The Seller shall, as promptly as practicable, file or supply, or cause to be filed or supplied, all applications, notifications and information required to be filed or supplied by them pursuant to Applicable Law in connection with the sale and transfer of the Assets pursuant to this Agreement and the consummation of the transactions contemplated hereby.  Seller, as promptly as practicable, (i) shall make, or cause to be made, all such other filings and submissions under laws, rules and regulations applicable to them and give such reasonable undertakings, as may be required for them to consummate the transfer of the Assets

9

and the other transactions contemplated hereby, (ii) shall use its commercially reasonable efforts to obtain, or cause to be obtained, all authorizations, approvals, consents and waivers from all Persons and Governmental Authorities necessary to be obtained by it in order for it to consummate such transfer and such transactions, including without limitation all third party consents required for the assignment of contracts, and (iii) shall use its reasonable efforts to take, or cause to be taken, all other actions necessary, proper or advisable in order for it to fulfill its obligations hereunder, including the prompt filing of the Certificate of Name Change; and Seller shall coordinate and cooperate with the Purchaser in exchanging such information and supplying such reasonable assistance as may be reasonably requested by the Purchaser in connection herewith.

4.6    Access to Records.  After the Closing Date, the Purchaser shall provide the Seller and its representatives reasonable access to the books and records of Seller included in the Assets during normal business hours and on reasonable prior notice, to enable the Seller to prepare tax returns, deal with tax audits or collect Accounts Receivable.

4.7    Further Assurances.  Following the Closing Date, any party shall, from time to time, execute and deliver such additional instruments, documents, conveyances or assurances as reasonably have been requested by the another party to confirm and assure the rights and obligations hereinabove set forth.

4.8    Restrictive Covenants.

4.8.1    Confidentiality.  The Seller will treat and hold as such all of the Confidential Information, refrain from using any of the Confidential Information except in connection with this Agreement, and deliver promptly to the Purchaser or destroy, at the request and option of the Purchaser, all tangible embodiments (and all copies) of the Confidential Information that are in its possession. In the event that Seller is requested or required (by oral question or request for information or documents in any legal proceeding, interrogatory, subpoena, civil investigative demand, or similar process) to disclose any Confidential Information, the Seller will notify the Purchaser promptly of the request or requirement so that the Purchaser may seek an appropriate protective order or waive compliance with the provisions of this Section 4.8. If, in the absence of a protective order or the receipt of a waiver hereunder, the Seller is on the advice of counsel, compelled to disclose any Confidential Information to any tribunal or else stand liable for contempt, such Seller may disclose the Confidential Information to the tribunal; *provided, however*, that such Seller shall use its best efforts to obtain, at the request of the Purchaser, an order or other assurance that confidential treatment will be accorded to such portion of the Confidential Information required to be disclosed as the Purchaser shall designate.

4.8.2    Non-Disparagement.  The Seller shall not make any statements, whether oral or in writing, that would tend to disparage or defame the Purchaser, its respective products, services, employees, officers, directors or shareholders.

4.8.3    Remedies.  The Seller acknowledges and agrees that if they were to breach the covenants contained in Sections 4.8.1 or 4.8.2 hereof, monetary damages alone would not adequately compensate the Purchaser.  In addition to all remedies available at law or in equity, in

10

the event that any of the Seller breaches the covenants contained in Sections 4.8.1 or 4.8.2 hereof, the Purchaser shall be entitled to interim restraints and permanent injunctive relief for the enforcement thereof.  The duration of the Seller's covenants set forth in Sections 4.8.1 or 4.8.2 also shall be extended by a period of time equal to the number of days, if any, during which any of the Seller is in violation of the provisions contained in Sections 4.8.1 or 4.8.2 (as applicable). All of the rights and remedies of the parties hereto shall be cumulative with, and in addition to, any other rights, remedies or causes of action allowed by law or equity and shall not exclude any other rights or remedies available to either of the parties hereto.

4.8.4  Acknowledgements.   The Seller acknowledges that (i) the type of restrictions, periods of restriction, and geographical scope of the restrictions imposed in the provisions of Sections 4.8.1 or 4.8.2 are fair and reasonable and are reasonably required in order to protect and maintain the proprietary interests of the Purchaser, other legitimate business interests and the goodwill associated with the business of the Purchaser; and (ii) the time, scope, geographic area and other provisions of this Section 4.8 have been specifically negotiated by sophisticated commercial parties, represented by legal counsel, and are given as an integral part of this Agreement. If any of the covenants contained in this Section 4.8 or any part thereof, is held to be unenforceable by reason of it extending for too great a period of time or over too great a geographic area or by reason of it being too extensive in any other respect, the parties agree (a) such covenant shall be interpreted to extend only over the maximum period of time for which it may be enforceable and/or over the maximum geographic areas as to which it may be enforceable and/or over the maximum extent in all other respects as to which it may be enforceable, all as determined by the court or arbitration panel making such determination and (b) in its reduced form, such covenant shall then be enforceable, but such reduced form of covenant shall only apply with respect to the operation of such covenant in the particular jurisdiction in or for which such adjudication is made. Each of the covenants and agreements contained in this Section 4.8 (collectively, the "Protective Covenants") is separate, distinct and severable. All rights, remedies and benefits expressly provided for in this Agreement are cumulative and are not exclusive of any rights, remedies or benefits provided for by law or in this Agreement, and the exercise of any remedy by a party hereto shall not be deemed an election to the exclusion of any other remedy (any such claim by the other party being hereby waived). The existence of any claim, demand, action or cause of action of the Seller against the Purchaser, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Purchaser of each Protective Covenant. The unenforceability of any Protective Covenant shall not affect the validity or enforceability of any other Protective Covenant or any other provision or provisions of this Agreement.

4. 8.8  Survival of Restraints.  The provisions of this Section 4.8 shall survive the closing of the transactions contemplated hereby.

4.10    Expense Reimbursement.   Upon termination of this Agreement by Purchaser pursuant to Section 7.1.1(b) or Section 7.1.1(i), Seller shall reimburse up to $20,000 of the actual and documented out-of-pocket fees and expenses incurred by Purchaser and its Affiliates in the course of negotiating, drafting and approving this Agreement, Disclosure Schedules and the Transaction Documents prior to the date this Agreement is terminated, whether incurred before, on or after the Petition Date (the "Expense Reimbursement").  The claims of Purchaser to the

11

Expense Reimbursement shall constitute an administrative expense against Seller's bankruptcy estate under the applicable provisions of the Bankruptcy Code. "Alternative Transaction" means (a) a merger, consolidation, restructuring, reorganization, plan of reorganization in the Bankruptcy Case, joint venture, refinancing, funding of a plan of reorganization in the Bankruptcy Case, business combination, transaction or series of transactions involving the sale or other disposition (including, without limitation, by lease, foreclosure, transfer in lieu of foreclosure, or management agreement) of all or any part of a Seller, the Business, the Assets or any other assets of a Seller pursuant to one or more transactions to a Person other than Purchaser; (b) the sale of outstanding or newly issued (or some combination of sold and newly issued) capital stock of a Seller (including by way of a debt for equity swap, tender offer, foreclosure or plan of reorganization or liquidation) resulting in a transfer of voting control of a Seller to a Person or group of Persons who, before the transaction or series of transactions, did not hold voting control of such Seller; or (c) any other business combination with a Person other than Buyer affecting the Assets or voting control of a Seller.

4.11    Employees and Employee Benefits.

4.11.1 Purchaser will have the right to offer employment to all present or former employees of the Seller. It is contemplated, but not required, that potentially certain other members of the existing management team of the Seller (the "Key Employees") shall be hired as employees of Purchaser. The terms and conditions of the continued employment of the Key Employees may be detailed in letters of offer of employment to be entered into between the Purchaser and the Key Employees on terms as shall be mutually acceptable to Purchaser and such Key Employees, (the "Employment Letters"). The Employment Letters may contain such terms and provisions customary for such employment contracts and employment offer letters including, without limitation, non-competition/non-solicitation provisions which are mutually acceptable to the parties thereto.

4.11.2 On the Closing Date, Seller will discharge all its employees and refer them to Purchaser for possible employment by Purchaser at Purchaser's option and in Purchaser's sole discretion. Purchaser has no obligation to hire any employees of the Seller pursuant to this Agreement. Seller acknowledges, however, that the Purchaser is entitled to hire any of the Employees (the "Applicable Employees"); provided that Purchaser shall give Seller a written list of those Applicable Employees that it desires to hire at least five (5) days prior to the Closing Date. Seller shall be exclusively liable for all obligations and liabilities, including, without limitation, accrued vacation pay and sick pay, that may arise or have arisen prior to the Closing Date from the employment of employees with, or the termination of their employment by, Seller on or prior to the Closing Date. Seller agrees to pay all such obligations or liabilities or promptly reimburse Purchaser in the event that Purchaser assumes such obligations or liabilities failing payment by Seller.

4.12    Supplement to Disclosure Schedules. From time to time prior to the Closing, Seller shall supplement or amend the Disclosure Schedules hereto with respect to any matter hereafter arising or of which it becomes aware after the date hereof that causes a representation or warranty set forth in Section 2.1 to be untrue (each a "Schedule Supplement"). Each such Schedule Supplement shall be deemed to be incorporated into and to supplement and amend the Disclosure Schedules as of the Closing Date; provided, however, that if such event, development

or occurrence which is the subject of the Schedule Supplement constitutes or relates to something that has had or is reasonably likely to cause a Material Adverse Effect, then Purchaser shall have the right to terminate this Agreement pursuant to Section 7.1.1(c); provided, further, that Seller's provision of a Schedule Supplement and Purchaser's non-termination of this Agreement shall not constitute a waiver of any of Purchaser's rights hereunder.   After receiving a Schedule Supplement Purchaser may elect to close the transaction of purchase and sale contemplated by this Agreement and seek indemnification from Seller pursuant to Section 5.1.

4.13    Intentionally Omitted

4.14    Sales Tax on Transfer.  Unless waived by order of the Bankruptcy Court, all sales or use taxes payable with respect to and/or on account of the transfer of the Seller's furniture and fixtures to Purchaser shall be paid by Purchaser to Seller at the Closing in the form of a certified check in the amount of the sales tax indicated on the notice provided by the Tax Department (or, if no such notice is received as of the Closing, the amount agreed upon by Seller and Purchaser based on the allocation of the Purchase Price and the applicable sales tax rate) made payable to the Tax Department.  Seller shall promptly remit the same to the Tax Department following Closing. Seller shall defend, indemnify and hold the Purchaser harmless against all claims for any additional New York State sales tax owed in connection with this Agreement and the transactions contemplated hereby.

4.15    Bankruptcy Covenants.

4.15.1 The Sale Motion seeking the entry of the Bidding Procedures Order shall be filed promptly after execution of this Agreement.  The purchase and sale of the Assets shall be subject to the terms and conditions of the Bidding Procedures Order.

4.15.2 If this Agreement and the sale of the Assets to Purchaser on the terms and conditions hereof are determined to be the "highest or otherwise best offer" in accordance with the Bidding Procedures Order, Purchaser and Seller agree to use commercially reasonable best efforts to cause the Bankruptcy Court to enter the Sale Order, which shall include provisions authorizing and approving the transactions contemplated hereby, including, without limitation (i) the sale of the Assets to Purchaser free and clear of all encumbrances pursuant to the terms of this Agreement and Section 363(b) and (f) of the Bankruptcy Code; (ii) finding Purchaser to be in good faith and providing for the protection afforded under Section 363(m) of the Bankruptcy Code; (iii) waiving the stays set forth in Bankruptcy Rules 6004(h) and 6006(d); (iv) providing that Purchaser shall not be subject to any successor liability and shall have no liability or suffer any damages for any encumbrances existing prior to the Closing Date which may be asserted against Seller, the Assets, the Business or Seller's bankruptcy estate, or any claims against Purchaser as successor to the Assets; (v) approving the assumption and assignment to the Purchaser pursuant to Section 365 of the Bankruptcy Code of all assigned contracts; (vi) providing for the retention of jurisdiction by the Bankruptcy Court to resolve any and all disputes that may arise under or relate to this Agreement or the Sale Order, whether between Seller and Purchaser or involving a Person in interest in the Bankruptcy Case; (vii) containing findings of fact and conclusions of law that include the following: (A) the transactions under this Agreement were negotiated and entered into in good faith and at arm's-length; (B) the marketing and sale process conducted by Seller pursuant to the Bidding Procedures are bona fide and adequate; (C)

Seller gave due and proper notice and an opportunity to be heard to all interested parties of this Agreement and the transactions contemplated herein; (D) Purchaser is not holding itself out to the public as a continuation of Seller; (E) the consideration to be paid by Purchaser under this Agreement constitutes reasonably equivalent value (as that term is used in each of the Uniform Fraudulent Transfer Act and Section 548 of the Bankruptcy Code) and fair consideration for the Assets; and (F) neither Purchaser nor Seller are entering into the transactions contemplated by this Agreement fraudulently.  Seller shall promptly provide Purchaser with copies of any objections to the Sale Order.

4.15.3  In the event an appeal is taken or a stay pending appeal is requested (or a petition for certiorari or motion for rehearing or reargument is filed), with respect to the Bidding Procedures Order, the Sale Order, or any other order of the Bankruptcy Court related to this Agreement, Seller shall take all steps as may be reasonable and appropriate to defend against such appeal, petition, or motion and Purchaser agrees to cooperate in such efforts.  Each Party shall use its commercially reasonable best efforts to obtain an expedited resolution for such appeal.

4.15.4  From and after the date of this Agreement, except as may be provided in the Bidding Procedures Order, Seller shall not take any action or fail to take any action, which action or failure to act would reasonably be expected to prevent or impede the consummation of the transactions contemplated by this Agreement in accordance with the terms of this Agreement.  Seller covenants and agrees that the terms of any plan of reorganization or liquidation or proposed order of the Bankruptcy Court that may be filed, proposed or submitted or supported by Seller after entry of the Sale Order or consummation of the transactions contemplated hereby shall not conflict with, supersede, abrogate, nullify, modify or restrict the terms of this Agreement, the Bidding Procedures Order or the Sale Order, or the rights of Purchaser hereunder or thereunder.

4.15.5  The Parties shall consult with each other regarding pleadings that any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Bankruptcy Court's approval of, as applicable, the Bidding Procedures Order and the Sale Order.  Each Party shall promptly provide the other Party and its counsel with copies of all notices, filings and orders of the Bankruptcy Court that such Party has in its possession (or receives) pertaining to the Sale Motion, or any other order related to any of the transactions contemplated by this Agreement, but only to the extent such papers are not publicly available on the docket of the Bankruptcy Court or otherwise made available to the other Parties and their counsel.

4.16   Acquisition Proposal or Alternate Transaction.  Seller represents that, other than this Agreement, Seller is not party to or bound by any contract with respect to an Acquisition Proposal or an Alternate Transaction.  If, after the date hereof, Seller receives any written proposal or offer with respect to a potential or actual Acquisition Proposal or Alternate Transaction, Seller shall promptly (but no later than two (2) days after receipt thereof) communicate to Purchaser the material terms of any such proposal or offer and, if not prohibited by confidentiality obligations, the identity of the party making such proposal or offer.  Subject to Bankruptcy Court approval, Seller agrees that in order for any Acquisition Proposal to be accepted by Seller and submitted for approval by the Bankruptcy Court, such proposal must be a "Qualified Bid" as defined in the Bidding Procedures Order.

4.17    <u>Amendment of Name</u>.  Following the Closing, the Seller covenants and agrees to cease using the names "Hot Shot HK LLC" and "Hot Gal."

## <u>ARTICLE V</u>

## **INDEMNIFICATION**

5.1    <u>By Seller</u>.   The Seller covenants and agrees to defend, indemnify and hold harmless the Purchaser and its Affiliates, and each of its respective officers, directors, employees and agents from and against any and all liability, obligation, loss, cost, diminution of value, deficiency or damage (whether absolute, accrued, conditional or otherwise) and including reasonable attorneys' fees incurred in the defense of any of the same ("<u>Losses</u>"), resulting from or arising out of (a) in the case of the Seller, (i) the incorrectness of any representation or warranty made by the Seller herein, (ii) any breach of any covenant, agreement or obligation to be performed by Seller herein; (iii) any liabilities or obligations of Seller other than the Assumed Liabilities, (iv) any claims relating to the Seller's operations other than the Business; or (v) any claim or loss engendered by Purchaser's exercise of the powers granted it pursuant to Section 4.6 of this Agreement. In all cases the Seller's obligation to provide indemnification for Losses shall end from and after the date, if any, that a court of competent jurisdiction shall have determined in a final and non-appealable judgment that such claim or loss resulted primarily from the gross negligence or willful misconduct of the Purchaser.  <u>Provided</u>, <u>however</u>, Seller's indemnification obligations with respect to breaches of representations and warranties shall be limited to the Purchase Price (except for breaches of fundamental transactional representations and warranties, including but not limited to, those relating to organization, power and authority, due execution and delivery, binding effect, title to assets and/or shares, taxes, and ERISA, (collectively, the "<u>Fundamental Representations</u>")); further provided, however, that breaches or claims arising out of fraud, intentional misrepresentation or willful misconduct, or the Fundamental Representations, shall not be subject to the aforementioned limitations.  Non-Fundamental Representations and warranties shall survive the Closing for a period of twelve (12) months and the Fundamental Representations and warranties shall survive until at least the termination of the applicable statute of limitations (and in certain cases, such as with respect to title, indefinitely).

5.2    <u>By Purchaser</u>.  The Purchaser agrees to defend, indemnify and hold harmless the Seller from and against any and all Losses, resulting from or arising out of (i) the incorrectness of any representation or warranty made by the Purchaser herein, (ii) any breach of any covenant, agreement or obligation to be performed by Purchaser herein; or (iii) the Assumed Liabilities.

5.3    <u>Procedure</u>.

5.3.1    The party making a claim under this Article V is referred to as the "Indemnified Party", and the party against whom such claims are asserted under this Article V is referred to as the "Indemnifying Party."  In the case of any claim asserted by a third party against an Indemnified Party, notice shall be given by the Indemnified Party to the "Indemnifying Party" promptly after such Indemnified Party has actual Knowledge of any claim as to which indemnity may be sought, and the Indemnified Party shall permit the Indemnifying Party (at the expense of

such Indemnifying Party) to assume the defense of any claim or any litigation resulting therefrom, provided that (i) counsel for the Indemnifying Party, who shall conduct the defense of such claim or litigation, shall be reasonably satisfactory to the Indemnified Party, and the Indemnified Party may participate in such defense, but only at such Indemnified Party's expense pursuant to this Section 5.3, and (ii) the omission by any Indemnified Party to give notice as provided herein shall not relieve the Indemnifying Party of its indemnification obligation under this Agreement except to the extent that such omission results in the a failure of actual notice to the Indemnifying Party and such Indemnifying Party is damaged as a result of such failure to give notice.  No Indemnifying Party, in the defense of any such claim or litigation, shall, except with the consent of the Indemnified Party, consent to entry of any judgment or enter into any settlement which does not include as an unconditional term thereof the giving by the claimant or plaintiff to such Indemnified Party of a release from all liability with respect to such claim or litigation.  The Indemnifying Party shall have the full right to defend against any such claim or demand, and shall be entitled to settle or agree to pay in full such claim or demand; provided, however, that the Indemnifying Party shall not accept settlement of any such claim or demand without the prior written consent of the Indemnified Party, which consent shall not be unreasonably withheld.  In any event, the Seller and the Purchaser shall cooperate in the defense of any action or claim subject to this Section 5.3 and the records of each shall be available to the other with respect to such defense.

5.3.2   Except in the case of fraud or breaches of this Agreement that merit the issuance of interim restraints and/or permanent injunctive relief, the indemnification provided for in this Section shall provide the sole recourse for the parties to this Agreement in the event of a breach of or inaccuracy in a representation or warranty, or any other breach of this Agreement. In furtherance of the foregoing, each party hereby waives, to the fullest extent permitted under Applicable Law, except in the case of fraud, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates arising under or based upon any Applicable Law, except pursuant to the indemnification provisions set forth in this Article V.

5.3.3   No indemnification may be sought for breach of or inaccuracy in a representation or warranty unless written notice with respect thereto is given to the Indemnifying Party prior to the expiration of the subject representation or warranty under Section 5.4 hereof.

5.3.4   Intentionally Omitted

5.3.5   The Purchaser's right to indemnification hereunder shall not in any way be affected or limited by (a) the fact that the Purchaser performed due diligence on the Seller, the Assets and the Business, and (b) any Knowledge of the Purchaser, whether actual, constructive or otherwise, as to the inaccuracy of any of the representations or warranties made by the Seller hereunder.

5.4   <u>Survival of Representations, Warranties, and Covenants.</u>  All representations and warranties herein shall terminate on the Closing Date.  The covenants and agreements contained herein that are required to be performed on or prior to the Closing Date shall terminate on the

16

Closing Date and the covenants that require performance after the Closing Date shall survive in accordance with the terms thereof.

5.5    Certain Limitations.  The indemnification provided for in Section 5.1 and Section 5.2 shall be subject to the following limitations:

5.5.1    Each Indemnified Party shall take, and cause its Affiliates to take, all commercially reasonable steps to mitigate any Loss upon becoming aware of any event or circumstance that would be reasonably expected to, or does, give rise thereto, including incurring costs only to the minimum extent necessary to remedy the breach that gives rise to a claim for indemnification.

## ARTICLE VI

## CONDITIONS PRECEDENT

6.1    Conditions to Closing of the Parties.  The respective obligations of the Parties to consummate the transactions contemplated by this Agreement at the Closing are subject to (i) Seller's providing Purchaser with duly executed agreements by Prepetition Lender releasing any and all Liens, claims, or encumbrances it may have with respect to the Assets and Purchaser's acquisition of same; or (ii) otherwise provide for entry of an Order of the United States Bankruptcy Court in accordance with Sections 363 and 365 of the Bankruptcy Code approving the transfer of Acquired Assets to Purchaser free and clear of all Liens, claims or encumbrances (the "Sale Order") in form and substance satisfactory to all Parties, which as of the Closing Date shall be in full force and effect and shall not have been violated, vacated, withdrawn, overruled, resolved or stayed, modified, reversed, amended or revoked.

6.2    Bidding Procedures Order and Sale Order.  Purchaser's obligations to consummate the Closing hereunder are contingent upon the Bankruptcy Court having entered the Bidding Procedures Order and the Sale Order, which Sale Order shall have become a Final Order.

6.3    Filed Motions.  Purchaser's obligations to consummate the Closing hereunder are contingent upon all motions and other documents having been filed with and submitted to the Bankruptcy Court in connection with the Acquisition (including, without limitation, the Sale Order), in the form and substance satisfactory to Purchaser in its sole discretion.

6.4    No Default.  In the event that a DIP Agreement is entered into after the date of this Agreement, there shall exist no default or event of default under the same.

6.5    Sale Order.  Purchaser's obligations to consummate the Closing hereunder are contingent upon the Bankruptcy Court having entered the Bidding Procedures Order which, *inter alia*, approves the amount and conditions for payment of the Expense Reimbursement and which is in form and substance satisfactory to Purchaser, and the Bankruptcy Court having entered a Sale Order, in form and substance satisfactory to Purchaser in its sole discretion, which order shall be in full force and effect; shall not have been reversed, vacated or stayed; shall not have been amended, supplemented, or otherwise modified without the prior written consent of

Purchaser (which consent shall not be unreasonably withheld), and the Sale Order shall have become a Final Order.

6.6   <u>Receipt of Governmental Approvals</u>.   Purchaser's and Seller's obligations to consummate the Closing hereunder are contingent upon Seller and Purchaser receiving all Governmental Approvals required for lawful consummation of the transactions contemplated herein, if any.   The parties shall use their commercially reasonable best efforts to obtain all such Governmental Approvals.

6.7   <u>Bankruptcy Case</u>.   Since the date of this Agreement, there shall not have been any dismissal of the Bankruptcy Case or conversion of the Bankruptcy Case to a case under Chapter 7 of Title 11 of the United States Code.

6.8   <u>Intentionally Omitted</u>.

6.9   <u>Delivery</u>.   Seller and Purchaser shall have delivered all customary closing certificates.

6.10   <u>No Material Adverse Change</u>.   Purchaser's obligation to consummate the Closing hereunder is contingent on the absence of any interruption or material adverse change in the ordinary course of the Seller's Business, its condition, Assets, operations, or business prospects.

## **ARTICLE VII**

## **TERMINATION**

7.1   <u>Termination</u>.

7.1.1   <u>Termination of Agreement</u>.   The parties may terminate this Agreement as provided below (whether before or after the entry of the Bidding Procedures Order and/or the Sale Order):

(a)   the Purchaser and the Seller may terminate this Agreement by mutual written consent at any time prior to the Closing;

(b)   the Purchaser may terminate this Agreement by giving written notice to the Seller at any time prior to the Closing (i) in the event the Seller has breached any representation, warranty, or covenant contained in this Agreement and such breach has caused or is reasonably likely to cause a Material Adverse Effect, or (ii) if the Closing shall not have occurred on or before the Closing Date because any of the conditions precedent set forth in Sections 6.2 through 6.10 hereof have not been satisfied in full;

18

(c)    the Seller may terminate this Agreement by giving written notice to the Purchaser at any time prior to the Closing (i) in the event the Purchaser has breached any representation, warranty, or covenant contained in this Agreement and such breach has caused or is reasonably likely to cause a Material Adverse Effect, or (ii) if the Closing shall not have occurred on or before the Closing Date because any of the conditions precedent set forth in Sections 6.2 and 6.3 hereof have not been satisfied in full;

(d)    the Purchaser may terminate this Agreement by giving written notice to Seller if the Closing shall not have occurred on or before 5:00 p.m. on the fifteenth day after the Sale Order has been entered;

(e)    the Purchaser may terminate this Agreement by giving written notice to Seller if (i) the Bankruptcy Court has not entered the Bidding Procedures Order on or before March 15, 2016 or (ii) the Bidding Procedures Order has been entered but is stayed, withdrawn, or rescinded as of such date;

(f)    the Purchaser may terminate this Agreement by giving written notice to Seller if (i) the Bankruptcy Court has not entered the Sale Order on or before April 15, 2016 or (ii) on or after April 22, 2016 if a legal proceeding shall be pending pursuant to which a Person has appealed the Sale Order, or if the Sale Order shall have been withdrawn or rescinded;

(g)    the Purchaser may terminate this Agreement by giving written notice to Seller if an order has been entered dismissing the Bankruptcy Case, converting the Bankruptcy Case to a Chapter 7 case or if Seller files a motion or other pleading seeking the dismissal or conversion of the Bankruptcy Case under Section 1112 of the Bankruptcy Code or otherwise;

(h)    the Purchaser or the Seller may terminate this Agreement in the event that any Law or order becomes effective restraining, enjoining, or otherwise prohibiting or making illegal the consummation of the transactions contemplated by this Agreement;

(i)    the Seller may terminate this Agreement at any time after the Bankruptcy Court approves an Alternate Transaction, or Purchaser may terminate this Agreement upon the closing of an Alternate Transaction;

(j)    the Purchaser may terminate this Agreement at any time after the appointment of a Chapter 7 trustee or an examiner with expanded powers in the Bankruptcy Case;

(k)    the Purchaser may terminate this Agreement at any time in the event the Bankruptcy Court does not approve the Expense Reimbursement;

(l)    the Purchaser may terminate this Agreement in the event the Bankruptcy Court grants relief from the automatic stay to any party to permit foreclosure or the exercise of other remedies on any material assets of Seller, other than any such relief from automatic stay granted to Purchaser under a DIP Agreement;

19

(m)     the Purchaser may terminate this Agreement in the event that the Seller modifies, alters or amends this Agreement without the consent of Purchaser, or in the event that the Seller consents to any such modification, alteration or amendment; or

(n)     In the event that a DIP Agreement is entered into, Purchaser may terminate this Agreement if an event of default under the DIP Agreement has occurred and has not been cured or waived by Purchaser in accordance with the terms of such DIP Agreement documents.

7.2     Effect of Termination.  In the event of the termination of this Agreement pursuant to the provisions of Section 7.1, this Agreement shall become void and have no effect, without any liability on the part of any party hereto, or any of its directors, officers, employees, agents, consultants, representatives or stockholders, to any other party to this Agreement in respect of this Agreement, except for (i) any liability resulting from such party's breach of this Agreement, and (ii) Seller's obligation, if any, to Purchaser to pay the Expense Reimbursement.

## ARTICLE VIII

## DEFINITIONS; MISCELLANEOUS

8.1     Definition of Certain Terms.  The following terms shall have the following meanings:

Accounts Payable:  obligations to trade creditors on account of services rendered or goods provided in connection with the operation of the Business prior to the Closing Date.

Accounts Receivable:  (i) all trade accounts receivable and other rights to payment from customers of the Seller with respect to the Business, and the full benefit of all security for such accounts or rights to payment, (b) all other accounts or notes receivable of Seller and the full benefit of all security for such accounts or notes, and (iii) any claim, remedy or other right related to any of the foregoing.

Affiliate:  as to any Person, means any other Person who or which, directly or indirectly, alone or together with others, controls, is controlled by, or is under common control with such Person, or any officer or director of such Person or any member of the immediate family of any such natural Person.

Applicable Employee:  as defined in section 4.11.2.

Applicable Law:  means all applicable provisions of all (i) constitutions, treaties, statutes, laws, rules, regulations, ordinances, orders or directives of any Governmental Authority, (ii) Governmental Approvals and (iii) orders, decisions, judgments, awards and decrees of any Governmental Authority.

Acquisition Proposal:  means a proposal (other than from Purchaser) relating to (i) any merger, consolidating, restructuring, reorganization, plan of reorganization in the Bankruptcy

Case, joint venture, refinancing, funding of a plan of reorganization in the Bankruptcy Case, business combination, sale or other disposition of all or any part of a Seller, the Business, the Assets or any other assets of a Seller pursuant to one or more transactions, (ii) the sale of any of the outstanding shares of capital stock or equity interests of a Seller (including by way of a debt for equity swap, tender offer, foreclosure or plan of reorganization or liquidation) or (iii) any similar transaction or business combination involving one or more Persons (other than Purchaser) and a Seller with respect to a Seller, the Business, the Assets, or any other assets of Seller.

Assets:  means the following assets used in the Business: all of the Seller's tangible and intangible assets, including but not limited to, cash, receivables, goodwill, purchase orders, samples, molds, models, designs, patents, trademarks, trade names, copyrights, other intellectual property, furniture, fixtures and equipment, claims and causes of action, customer lists and related interests, books and records, internet sites and domain names, fax and telephone numbers, business relationships and general intangibles, as well as Causes of Action including Avoidance Actions.  .

Assigned Contracts: means all of Seller's contracts that are (i) listed on Schedule 1.5 of Seller's Disclosure Schedules as the date hereof and (ii) listed on Schedule 1.5 of the Seller's Disclosure Schedules after the date hereof with Purchaser's prior written consent.

Assumed Liabilities:  as defined in Section 1.5.

Acquired Avoidance Action:  means any Avoidance Actions on account of or with respect to payments or transfers of property made by Seller to any former or current managers, employees and independent contractors of Seller and any subsidiaries prior to the filing of the Bankruptcy Case who are employed or engaged by Purchaser or any of its Affiliates or assignees.

Avoidance Actions:  means all causes of action of Seller under Sections 544 through 553 of the Bankruptcy Code with respect to payments or transfers of property made prior to the filing of the Bankruptcy Case.

Bankruptcy Case:  as defined in the first "Whereas" clause.

Bankruptcy Code:  as defined in the first "Whereas" clause.

Bankruptcy Court:  as defined in the first "Whereas" clause.

Bankruptcy Rules:   means the Federal Rules of Bankruptcy Procedure, as amended, or any successor rules.

Bidding Procedures:  means the procedures for the submission of competing bids for the acquisition of the Assets as approved by the Bidding Procedures Order.

Bidding Procedures Order:  means the order to be entered by the Bankruptcy Court approving those portions of the Sale Motion that concern the notice of auction and sale hearing, Bidding Procedures, and bidding protections, including the Expense Reimbursement.

Business:  as defined in the second "Whereas" clause.

Causes of Action:  means all claims, causes of action, choses in action, rights of recovery, repayment obligations, rights of setoff and rights of recoupment that Seller has or may have against any Person.

Client Contracts:  as defined in Section 1.6.

Closing:  as defined in Section 1.3.

Code:  the Internal Revenue Code of 1986, as amended.

Confidential Information: confidential or proprietary information about the Purchaser, the Seller and/or its respective clients or customers, including but not limited to, trade secrets, methods, models, passwords, access to computer files, financial information and records, computer software programs, agreements and/or contracts between the Seller and its respective clients and customers, Client Contacts, creative policies and ideas, educational and strategic marketing support products, methods of operation, financial or business projections of the Seller or the Purchaser and information about or received from the Seller's or the Purchaser's clients or customers and other companies with which the Seller or the Purchaser do business.

DIP Agreement:  means any debtor-in-possession financing facility, if any, entered into after the date hereof by and between Seller and Purchaser.

Disclosure Schedule:  the disclosure schedule, dated the date hereof, which has been delivered to the Purchaser by the Seller and initialed by the Seller for identification.

ERISA: the Employee Retirement Income Security Act of 1974, as amended.

Excluded Contracts: all contracts other than the Assigned Contracts.

Final Order:  means an order or judgment, the operation or effect of which is not stayed, and as to which order or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired, and as to which no appeal or petition for review or motion for re-argument has been taken or been made and is pending for argument.

Governmental Approval:  means an authorization, consent, approval, permit, license or exemption of, registration or filing with, or report or notice to, any Governmental Authority.

Governmental Authority:  means any nation or government, any regional, state, local or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, including, without limitation, any government authority, agency, department, board, commission or instrumentality

of the United States, any State of the United States or any political subdivision thereof, and any tribunal or arbitrator(s) of competent jurisdiction.

IP Agreements:  as defined in Section 1.7.

Intellectual Property:  as defined in Section 2.1.12.

Knowledge:  actual or constructive knowledge after diligent inquiry.

Lien:  any mortgage, pledge, adverse claim, security interest, encumbrance, title defect, title retention agreement, voting trust agreement, interest, equity, option, lien or charge of any kind.

Material Adverse Effect:  any material adverse change in the condition (financial or other) of the Seller's properties, assets, liabilities, business, operations or prospects, other than changes of a general economic or political nature, which do not affect the Seller or the Business uniquely.

Multiemployer Plan:  a "multiemployer plan" within the meaning of Section 3(37) of ERISA.

Ordinary Course of Business.  an action taken by a Person will be deemed to have been taken in the "Ordinary Course of Business" only if such action is consistent with the past practices of such Person and is taken in the ordinary course of the normal day-to-day operations of such Person.

Permitted Lien(s).  (a) liens for Taxes not yet due and payable or being contested in good faith by appropriate procedures; (b) mechanics', workmen's, repairmen's or other like liens arising or incurred in the ordinary course of business; (c) liens arising under original purchase price conditional sales contracts and equipment leases with third parties entered into in the ordinary course of business; and (d) other immaterial imperfections of title or Liens, if any, that have not, and would not, interfere with Purchaser's continued use of the Assets and conduct of the Business as presently conducted.

Person:  any natural person, firm, partnership, association, corporation, limited liability company, trust or Governmental Authority.

Petition Date:  means February 26, 2016.

Prepetition Lender: JPMorgan Chase, N.A.

Purchaser:  as defined in the first paragraph of this Agreement.

Returns:  all reports, estimates, declarations, information statements and returns due under all foreign, federal, state or local laws or regulations, as appropriate, relating to Taxes.

23

Sale Motion:  means the motion filed in the Bankruptcy Court on behalf of Seller, for among other things, approval of the notice of auction and sale hearing, Bidding Procedures and bidding protections, including the Expense Reimbursement, the sale of the Assets to Purchaser and the assignment by Seller, and assumption by Purchaser, of the Assigned Contracts.

Sale Order:  means one or more orders of the Bankruptcy Court authorizing among other things, the sale of the Assets to Purchaser and the assignment by Seller and assumption by Purchaser of the Assigned Contracts.

Taxes:    means all federal, state, local and foreign taxes, assessments and governmental charges, of any nature, kind or description (including, without limitation, all income taxes, franchise taxes, withholding taxes, estimated taxes, unemployment insurance, social security taxes, payroll taxes, sales and use taxes, excise taxes, occupancy taxes, real and personal property taxes, stamp taxes, transfer taxes, workers' compensation and withholding taxes) and all interest, additions to tax and penalties with respect thereto, whether such interest, additions or penalties arise before or after the Closing Date.

Transaction Agreements:  as defined in Section 2.1.2.

8.2    Representation by Counsel.  Each party hereto has been represented by separate and independent counsel in connection with the negotiation, preparation and execution of this Agreement.

8.3    Expenses.  The Seller, on the one hand, and the Purchaser, on the other hand, shall bear their respective expenses, costs and fees (including attorneys' and accountants' fees) in connection with the transactions contemplated hereby, including the preparation and execution of this Agreement and compliance herewith, whether or not the transactions contemplated hereby shall be consummated, provided that the Seller, on the one hand, and the Purchaser, on the other hand, shall pay to the other all such expenses, costs or fees incurred by the other if such party shall materially breach its obligations hereunder.

8.4    Payment of Taxes.  The Seller will be responsible for all income, sales or other taxes associated with the Business accrued or attributable to periods up to the Closing.  The Purchaser will be responsible for such taxes attributable to periods after the Closing.  The Purchaser shall not be responsible for Seller's taxes arising from the sale of the Assets.

8.5    Severability.  If any provision of this Agreement is inoperative or unenforceable for any reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstance, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatsoever.   The invalidity of any one or more phrases, sentences, clauses, sections or subsections of this Agreement shall not affect the remaining portions of this Agreement.

8.6    Notices.  All notices, requests, demands and other communications made in accordance with this Agreement shall be in writing and shall be (a) mailed by first-class,

24

registered or certified mail, return receipt requested, postage prepaid, or (b) transmitted by hand delivery, or (c) nationally recognized overnight courier, addressed as follows:

To Seller:

Hot Shot HK, LLC
1407 Broadway, Suite 2018
New York, NY 10018
Attn: Joseph Saadia

with copies to Seller's counsel:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Fl.
New York, NY 10036
Attn:  Sean C. Southard, Esq.

To Purchaser:

HS HK Acquisition LLC
1 W. 34th St., 10th Fl.
New York, NY 10001

with copies to Purchaser's counsel:

The Law Offices of Rachel Blumenfeld
26 Court Street
Brooklyn, NY 11242
Attn: Rachel S. Blumenfeld

By the methods set forth above, notices may be given on behalf of any party by its legal counsel directly to the legal counsel of the other party.

8.7    <u>Miscellaneous</u>.

8.7.1    <u>Headings</u>.  The headings contained in this Agreement are for purposes of convenience only and shall not affect the meaning or interpretation of this Agreement.

8.7.2    <u>Entire Agreement</u>.  This Agreement, together with the Schedules and Exhibits hereto, constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.

8.7.3    <u>Counterparts</u>.  This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument.  Electronic copies of the signature pages shall be enforceable as originals.

8.7.4  <u>Governing Law; Consent to Jurisdiction</u>.  Except to the extent governed by federal bankruptcy law, this Agreement shall be governed in all respects, including as to validity, interpretation and effect, by the laws of the State of New York, excluding only New York's conflicts of laws.  To the fullest extent permitted by applicable law, the parties hereby (a) agree that any claim, action or proceeding by such party seeking any relief whatsoever arising out of, or in connection with this Agreement or any Transaction Documents or the transactions contemplated hereby and thereby shall be brought only in (i) the Bankruptcy Court, if brought prior to the entry of a final decree closing the Bankruptcy Case, and (ii) in the federal courts in the Southern District of New York, and the state courts of the State of New York, New York County (the "New York Courts") if brought after entry of such final decree closing the Bankruptcy Case, and shall not be brought, in each case, in any other State or Federal court in the United States of America or any court in any other country, (b) agree to submit to the exclusive jurisdiction of the Bankruptcy Court or the New York Courts, as applicable, pursuant to the preceding clauses for purposes of all claims, actions or proceedings arising out of, or in connection with this Agreement or any Transaction Documents or the transactions contemplated by this Agreement, (c) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such claim, action or proceeding brought in such a court or any claim that any such claim, action or proceeding brought in such a court has been brought in an inconvenient forum, (d) agrees that the mailing of process or other papers in connection with any such claim, action or proceeding in the manner described in Section 8.6 hereto shall be valid and sufficient service thereof, and € agrees that a final judgment in any such claim, action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

8.7.5  <u>WAIVER OF JURY TRIAL</u>.  EACH OF THE PARTIES HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT AND ANY OF THE OTHER TRANSACTION DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN OR THEREIN.  EACH OF THE PARTIES HERETO CERTIFIES AND ACKNOWLEDGES THAT (i) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER OF THE PARITES HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE SUCH WAIVER, (ii) IT UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF SUCH WAIVER, (iii) IT MAKES SUCH WAIVER VOLUNTARILY, AND (iv) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATION IN THIS SECTION.

8.7.6  <u>Binding Effect</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and permitted assigns.

8.7.7    _Assignment_.  This Agreement shall not be assignable by any party hereto without the prior written consent of the Purchaser and the Seller; provided that Purchaser may assign this Agreement to a wholly owned subsidiary or commonly owned Affiliate.

8.7.8    No Third Party Beneficiaries.  Nothing in this Agreement shall confer any rights upon any person or entity other than the parties hereto and their respective heirs, successors and permitted assigns.

8.7.9    _Amendment; Waivers_.  No amendment, modification or discharge of this Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by the party against whom enforcement of the amendment, modification, discharge or waiver is sought.  Neither the waiver by any of the parties hereto of a breach of or a default under any of the provisions of this Agreement, nor the failure by any of the parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder, shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder.

8.7.10    Intentionally Omitted.

8.7.11    _Non-Recourse_.  No past, present or future director, officer, employee, incorporator, manager, member, partner, stockholder, Affiliate, agent, attorney or other representative of any party hereto or of any Affiliate of any party hereto, or any of their successors or permitted assigns, shall have any liability for any obligations or liabilities of any party hereto under this Agreement solely by reason of he or she serving or having served and a director, officer, employee, incorporator, manager, member, partner, stockholder, Affiliate, agent, attorney or other representative of such party.

[signatures on following page]

IN WITNESS WHEREOF the parties have executed this Agreement as of the Effective Date.

**SELLER:**
HOT SHOT HK, LLC

By: _____

Name: Youssef Saadia

Title:  Chief Operating Officer

**PURCHASER:**
**HS HK ACQUISITION LLC**

By: _____

Name:

Title:

## DISCLOSURE SCHEDULES

Available upon request subject to entry into a confidentiality agreement.

**EXHIBIT A**

BILL OF SALE; ASSIGNMENT AND ASSUMPTION AGREEMENT

[attached hereto]

## <u>BILL OF SALE</u>

This Bill of Sale ("Bill of Sale") is executed and delivered as of [_____, by Hot Shot HK, LLC a New York limited liability company (the "Seller"), to HS HK Acquisition LLC, a New York limited liability company ("Purchaser"), pursuant to the Asset Purchase Agreement, dated as of [_____], by an between the Seller and the Purchaser (the "Agreement").

**WHEREAS**, on the terms and subject to the conditions set forth in the Agreement, the Seller has agreed to sell, convey, assign, transfer and deliver to the Purchaser, and Purchaser has agreed to purchase and acquire from the Seller, the Assets (as defined in the Agreement); and

**WHEREAS**, the Agreement requires that the Seller execute and deliver to the Purchaser this Bill of Sale at the Closing.

**NOW, THEREFORE**, in consideration for the premises and other good and valuable consideration, the receipt and sufficiency of which a hereby acknowledged, the Seller and the Purchaser hereby agree as follows:

1.    <u>Defined Terms</u>. Capitalized terms used but not defined in this Bill of Sale have the meanings ascribed to them in the Agreement.

2.    <u>Transfer of the Assets</u>. The Seller hereby sells, conveys, assigns, transfers and delivers to the Purchaser the Assets, free and clear of all Liens.

3.    <u>Purchase and Sale</u>. This Bill of Sale shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

4.    <u>Governing Law</u>. This Bill of Sale shall be governed by, and be construed in accordance with, the laws of the State of New York (other than the choice of law principles thereof).

[remainder of page intentionally blank]

**IN WITNESS THEREOF**, the Seller has caused the undersigned duly authorized officer to execute this Bill of Sale as of the date and year first written above.

HOT SHOT HK, LLC

By: _____
Name: Joseph Saadia
Title: Chief Operating Officer

## ASSIGNMENT AND ASSUMPTION OF CONTRACTS

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT ("Agreement") is entered into this _____ day of _____ by and between HOT SHOT HK, LLC a New York limited liability company ("Assignor"), and HS HK ACQUISITION LLC, a New York limited liability company ("Assignee").

### WITNESSETH:

**WHEREAS**, Seller filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") on February 26, 2016 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under Case Number 16-10449 (JLG) (the "Bankruptcy Case");

WHEREAS, Assignor and Assignee entered into an Asset Purchase Agreement (the "Asset Purchase Agreement"), dated as of the 26th day of February pursuant to which Assignor agreed to sell to Assignee and Assignee agreed to purchase certain Assets as that term is defined in the Asset Purchase Agreement.

WHEREAS, included in the Acquired Assets are Contracts (defined below) which Assignor desires to assign to Assignee as described below.

WHEREAS, the Bankruptcy Court has approved this Agreement by Order, dated [ _____ Docket No. [   ].

NOW THEREFORE, in consideration of the premises and delivery on this date by Assignor to Assignee and its assigns of such assets of Assignor as contemplated by the Asset Purchase Agreement, and the mutual covenants hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.  **Defined Terms.**  All capitalized terms used herein shall have the meaning given such terms in the Asset Purchase Agreement, unless otherwise defined herein.  In the event of a conflict between the terms of this Assignment and Assumption of Contracts and the Asset Purchase Agreement, the Assignment and Assumption of Contracts shall control.

2.  **Assignment.** Assignor hereby sells, transfers and assigns to Assignee all of its right, title and interest in and under and in connection with all Contracts listed on Exhibit A (collectively, the "Contracts") and any other Contracts which are not Excluded Contracts, specifically including, but not limited to, any Contracts with other potential bidders, buyers or other parties providing for confidentiality, non-use or non-disclosure related to the Business; and such Contact shall be assigned:

    TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns from and after the date hereof, subject to the covenants, conditions and provisions

33

provided in the Asset Purchase Agreement.

3.      **Assumption**. Assignee, for itself and its successors and assigns, hereby accepts the transfer and assignment of said contracts and assumes and agrees to pay, perform and discharge the liabilities arising or to be performed on or after the Closing Date, on the conditions set forth in the Asset Purchase Agreement.

4.      **Further Assurances.**   Assignee covenants that it shall, upon the request of Assignor, execute and deliver such further bills of sale, assignments and other documents as may be reasonably required to sell, transfer, assign and deliver said contracts to Assignor and as may be appropriate to confirm or otherwise to carry out the transactions contemplated by the Asset Purchase Agreement and this Assignment and Assumption of Contracts.

**5.**      **Contracts.**  None of the contracts listed in Exhibit A hereto are in default, or such default shall have been cured at or prior to assumption and assignment, and Assignee has performed all its obligations pursuant to said contracts for matters arising before the Closing Date.

6.      **Successors and Assigns.**  This Assignment and Assumption of Contracts shall be binding upon the Assignee, its successors and assigns, and shall inure to the benefit of Assignor, its successors and assigns.

7.      **Governing Law.**   This Assignment and Assumption of Contracts shall be governed by and construed in accordance with the laws of the State of New York.

All capitalized terms used herein shall have the same meaning as defined in the Asset Purchase Agreement, unless otherwise defined herein.  This instrument may be executed in counterparts, all of which together shall constitute a fully executed Assignment.

IN WITNESS WHEREOF, the undersigned have executed this Assignment and Assumption of Contracts as of this _____ day of _____.

**HOT SHOT HK, LLC**

By: _____
Name:  Joseph Saadia
Title:   Chief Operating Officer

**HS HK ACQUISITION LLC**

By: _____
Name:
Title:

35

# Exhibit B

# Name Amendment

**<u>Exhibit D</u>**

**Notice of Assumption and Assignment of Contracts**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                              :          Chapter 11
                                                   :
HOT SHOT HK, LLC,                                  :          Case No. 16-10449 (JLG)
                                                   :
                                                   :
                    Debtor.                        :
----------------------------------------------------------------x

### NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT
### OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND
### ESTABLISHMENT OF CURE CLAIMS BAR DATE FOR NON-DEBTOR
### COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**TO ALL NON-DEBTOR COUNTERPARTIES TO
EXECUTORY CONTRACTS OR LEASES WITH THE DEBTOR:**

**PLEASE TAKE NOTICE** that, on February 26, 2016, the above-captioned debtor and debtor-in-possession (the "Debtor") filed its Motion For Orders Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 6006: (A)(i) Establishing Bidding Procedures and Bidding Protections in Connection with the Sale of Substantially All of the Assets of the Debtor, (ii) Approving the Form and Manner of Notices, (iii) Approving the Asset Purchase Agreement Subject to Higher and Better Offers and (iv) Settling a Sale Hearing Date; and (B)(i) Approving the Sale of Substantially All Assets of the Debtor Free and Clear of Liens, Claims and Encumbrances, (ii) Authorizing the Assumption and Assignment of Certain Unexpired Leases and Executory Contracts; and (iii) Granting Related Relief (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that in connection with the Sale,[7] the Debtor has filed a schedule of all of the Debtor's executory contracts and unexpired leases that may potentially be assumed and assigned to the Purchaser in accordance with the Asset Purchase Agreement (the "Assumption Schedule"); further, the Debtor has filed (among other things) the cure costs associated with each executory contract and unexpired lease on the Assumption Schedule, calculated in accordance with the Debtor's books and records. The Assumption Schedule is attached hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has established **April 5, 2016 at 4:00 p.m.** (the "Objection Deadline") as the date by which all non-debtor counterparties parties to the executory contracts and unexpired leases must electronically file with the Clerk of the Bankruptcy Court a cure claim, setting forth all claims and arrearages against the Debtor due under such executory contract or unexpired

---

[7] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

lease (the "Assumption Objection"), and serve a copy of the Assumption Objection upon (i) the attorneys for the Debtor, Klestadt, Winters, Jureller Southard & Stevens LLP, 200 West 41st St., 17th Floor, New York, New York 10036 (Attn: Maeghan J. McLoughlin, Esq.), (ii) the attorneys for the Committee, if one is appointed; (iii) Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014  (Attn: Paul Schwartzberg) and (iv) the attorneys for the Purchaser, The Law Offices of Rachel Blumenfeld, 26 Court Street, Brooklyn, NY 11242.

**PLEASE TAKE FURTHER NOTICE** that any party that is required to file an Assumption Objection, but fails to do so, shall be bound by the cure amount as set forth on the Assumption Schedule, and shall be forever barred from asserting any other Assumption Objection against the Debtor, its estate, the Purchaser, or its designee, and/or any Successful Bidder arising under such executory contract.

Dated:   New York, New York
         [_____]

                                    **KLESTADT WINTERS JURELLER**
                                    **SOUTHARD & STEVENS, LLP**


                         By:  _____
                              Sean C. Southard
                              Maeghan J. McLoughlin
                              200 W. 41st St., 17th Floor
                              New York, New York 10036
                              Tel: (212) 972-3000
                              Fax: (212) 972-2245
                              Email: ssouthard@klestadt.com
                                     mmcloughlin@klestadt.com

                              *Proposed counsel to the Debtor*

60

**<u>Exhibit E</u>**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                                       :        Chapter 11
                                                            :
HOT SHOT HK, LLC,                                           :        Case No. 16-10449 (JLG)
                                                            :
                                                            :
                            Debtor.                         :
-----------------------------------------------------------------x

<u>NOTICE OF AUCTION AND HEARING TO CONSIDER APPROVAL</u>
<u>OF THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS</u>

NOTICE IS HEREBY GIVEN, as follows:

On February 29, 2016, Hot Shot HK, LLC, the debtor and debtor in

possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case (this "<u>Chapter 11 Case</u>")

filed a motion (the "<u>Motion</u>") [Docket No. 4][8] which sought, among other things, entry of an

order pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code

(the "<u>Bankruptcy Code</u>"), and Rules 2002 and 6004 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"):  (a) approving the proposed Bidding Procedures to be

used in connection with the proposed sale of the Debtor's Assets, free and clear of any and all

liens, claims, encumbrances, security interests and other interests, to HS HK Acquisition

LLC (the "<u>Purchaser</u>"), or to any competing bidder or bidders (the "<u>Successful Bidder(s)</u>")

that submits or collectively submit a higher or better offer or offers for the Assets; (b)

scheduling the Auction and Sale Hearing to approve the Sale of the Assets;  (c) approving the

form and manner of notice of the Auction and Sale Hearing; and (d) approving the Bidding

Protections and certain overbid procedures in connection therewith (the "<u>Bidding Procedures</u>

<u>Order</u>").  The Bankruptcy Court conducted a hearing on [_____] to consider entry of

---

[8]    Capitalized terms used but not otherwise defined herein shall be ascribed the meanings provided in the
       Motion.

the Bidding Procedures Order. On [_____], the Court entered the Bidding Procedures Order [Docket No. [•]].

   The Motion, the Bidding Procedures, and the Bidding Procedures order have been filed electronically with the Clerk of the United States Bankruptcy Court for the Southern District of New York and may be reviewed by all registered users of the Court's website at http:ecf.nysb.uscourts.gov. Copies of the Motion can also be obtained by telephonic, written, or e-mail request to the undersigned counsel to the Debtor, Attn: Maeghan J. McLoughlin (Telephone: (212) 972-3000 or e-mail: mmcloughlin@klestadt.com.

   As set forth in the Bidding Procedures, the sale of the Assets remains subject to higher or better offers for all or a portion of the Assets and Bankruptcy Court approval. All interested parties are invited to make competing offers for all or a portion of the Assets in accordance with the terms of the Bidding Procedures and the Bidding Procedures Order. The deadline to submit a competing offer in accordance with the terms of the Bidding Procedures is **April 4, 2016, 4:00 p.m. (ET)** (the "**Bid Deadline**"). Pursuant to the Bidding Procedures Order, if a Qualified Bid other than the Purchaser's bid is received by the Bid Deadline, the Debtor may conduct an auction (the "**Auction**") for the sale of the Assets at 200 West 41st St., 17th Floor, New York, New York 10036, **beginning at 10:00 a.m. (ET) on April 8, 2016.**

   The Bidding Procedures Order further provides that a Sale Hearing will be held on [**April 12, 2016, at 10:00 a.m.] (ET)** before the Honorable James L. Garrity, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 , Courtroom No. 601.

At the Sale Hearing, the Debtor will request that the Bankruptcy Court enter an order, among other things, approving the highest or otherwise best bid for the Assets (which will be determined in accordance with the terms of the Bidding Procedures). In addition, the Debtor shall request that the Bankruptcy Court provide that the transfer of the Assets be free and clear of any and all liens, claims, interests, encumbrances and security interests, including successor liability claims, except as expressly assumed by Purchaser or Successful Bidder(s).

At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 case. Objections, if any, to the Motion must (a) be made in writing, (b) state with particularity the reasons for the objection or response, (c) conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, (d) set forth the name of the objecting party, the nature and basis of the objection, and the specific grounds therefore, and (e) be filed with the Clerk of the Court (with a copy to be delivered to the Chambers of the Honorable James L. Garrity, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, Courtroom No. 601, and shall be served upon: (i) proposed counsel to the Debtor, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, New York 10036, Attn.: Sean C. Southard.; (ii) proposed counsel for the Creditors' Committee, if one is appointed; (iii) counsel to the Purchaser, The Law Offices of Rachel Blumenfeld, 26 Court Street, Brooklyn, NY 11242; and (iv) the Office of the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn.: Paul Schwartzberg, so as to be **actually received** no later than **4:00 p.m. (EST) on April 5, 2016.**

64

Requests for information concerning the sale of the Assets should be directed by written or telephonic request to:  Maeghan J. McLoughlin, Esq., Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, New York 10036, (212) 972-3000 or via email at mmcloughlin@klestadt.com.

Dated:   New York, New York
         [_____]

        **KLESTADT WINTERS JURELLER**
        **SOUTHARD & STEVENS, LLP**


By: _____
      Sean C. Southard
      Maeghan J. McLoughlin
      200 W. 41st St., 17th Floor
      New York, New York 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: ssouthard@klestadt.com
            mmcloughlin@klestadt.com

      *Proposed counsel to the Debtor*